**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**WILLIAM D. FOWLER**

        **Plaintiff,**

**v.**                                               **CASE NO.:** _____

**KENNETH W. STOLLE, individually**                 *JURY TRIAL DEMANDED*
**and in his official capacity as Sheriff of**
**the City of Virginia Beach, Virginia**

        **Defendant.**

**SERVE:**     **Kenneth Stolle**
                **Sheriff of Virginia Beach**
                **Virginia Beach Sheriff's Office**
                **2501 James Madison Blvd.**
                **Virginia Beach, VA 23456**

## COMPLAINT

COMES NOW the Plaintiff, William D. Fowler ("Plaintiff" or "Mr. Fowler"), by counsel, for his complaint against Kenneth William Stolle ("Defendant" or "Sheriff Stolle"), and states and alleges as follows:

## NATURE OF THE CASE

1.    This is a civil action seeking damages against Defendant for committing acts under the color of law which deprived Plaintiff of rights secured under the Constitution and laws of the United States and Virginia.

2.    Specifically, this case is about Defendant Kenneth William Stolle's intentional decision to terminate Mr. Fowler's appointment in retaliation for the political beliefs held and articulated by

Mr. Fowler and his wife, who is a member of the Virginia House of Delegates, despite Mr. Fowler's consistently positive performance of his law enforcement duties.

3.      Public employees have a fundamental right to be able to speak on matters of public concern and may not be terminated merely because of their nondisruptive speech or their political and/or intimate associations.

4.      Likewise, public employees may not be terminated in retaliation for their spouse's speech, political beliefs, or political activities, in an attempt to chill the same fundamental rights.

## JURISDICTION AND VENUE

5.      This action arises as a result of Defendant's violation of Plaintiff's constitutional rights and, accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367, as well as 42 U.S.C. § 1983.

6.      Venue is appropriate in this Court under 28 U.S.C. § 1391 because all acts and/or omissions described herein occurred in the City of Virginia Beach, Virginia, the Defendant is a resident of the City of Virginia Beach, and this municipality is located within the Eastern District of Virginia.

## PARTIES

7.      Plaintiff William D. Fowler is, and was at all times relevant to this Complaint, a resident of Virginia Beach, Virginia and a citizen of the Commonwealth of Virginia and the United States. Prior to his wrongful termination he was a sworn, uniformed Deputy Sheriff within the Virginia Beach Sheriff's Office ("VBSO") for almost 15 years and held the rank of Sergeant.

8.      At all times relevant to this Complaint, Defendant Kenneth W. Stolle was the duly elected Sheriff of the City of Virginia Beach, Virginia. He is sued herein in both his individual and official

capacities. He is a resident of the City of Virginia Beach, Virginia and a citizen of the Commonwealth of Virginia and the United States.

9.      At all times relevant to this Complaint, Plaintiff was employed in a position by the Defendant with no policy-making authority or roles. At all times relevant to this Complaint, the Plaintiff performed his duties in an exemplary manner.

## **FACTUAL ALLEGATIONS**

10.     William D. Fowler is a longstanding former employee of the Virginia Beach Sheriff's Office, having faithfully served his community with excellence for nearly 15 years. During his service, Mr. Fowler attained the rank of Sergeant and was recommended for promotion to Lieutenant.

11.     Defendant Stolle is currently serving his fourth term as Sheriff of Virginia Beach since 2010 after serving as a state senator for 17 years.

12.     The Virginia Beach Sheriff's Office is organized in a fashion similar to military organizations. The Sheriff's Office employs more than 391 sworn deputies in addition to non-sworn administrative personnel. The Sheriff is the most senior executive officer within the organization and is responsible for all facets of its operation, including the hiring and firing of employees.

13.     The Sheriff is elected every four years in accordance with the Constitution and laws of Virginia and is accountable only to the electorate. Kenneth W. Stolle won re-election to the office of Virginia Beach Sheriff on November 2, 2021.

14.     The Sheriff is assisted by other senior officers who are appointed solely by him and serve at his pleasure. These senior officers generally include an Undersheriff, two (2) Chief Deputies,

eight (8) Captains. Sheriff Stolle demands and receives absolute political loyalty from the senior officers within the Office.

15.    The only employees or officers entitled to make or amend "policies" at the VBSO were the Sheriff himself and employees at the rank of Captain (who oversee divisions) and above.

16.    Mr. Fowler reported to the Intake and Release Lieutenant.

17.    The Intake and Release Lieutenant reports to the Captain of Correctional Support.

18.    Mr. Fowler has consistently received positive performance evaluations.

   a.   The VBSO provides annual reviews with a Performance and Development Plan to evaluate performance on a scale of 1 to 5 (1.0 - Below Standards, 2.0 - Progressing, 3.0 - Meets Standards, 4.0 - Above Standards, 5.0 - Consistently Exceeds Standards) in different categories.

   b.   Mr. Fowler consistently received scores of 4 and 5 in each category, showing his performance was either above standards or consistently exceeding standards. He always received scores evaluating his performance as meeting standards or above. He never received a score indicating his performance was anything less than satisfactory.

   c.   The most recent performance evaluation before his termination gave him a score of 4.2 (with all scores in the 4 or 5 range). The evaluation noted that he was recommended for promotion, documented his consistent growth and improvement, and praised his successful track record. His lieutenant noted that Mr. Fowler "has a wealth of knowledge and experience in intake and release" and stated, "I encourage him to continue with his leadership training and compete for promotion." Mr. Fowler's Captain summed up the evaluation with "Great job!!!"

**Termination of Mr. Fowler's Appointment**

19.     Mr. Fowler is married to Virginia House of Delegates representative Kelly Convirs-Fowler. ("Del. Convirs-Fowler").

20.     Del. Convirs-Fowler was first elected in 2017 for District 21. She has continued in office since that time and was most recently re-elected to her office November 2, 2021.

21.     On or about November 30, 2021, Sheriff Stolle called Mr. Fowler into his office and informed him that Mr. Fowler would not be re-appointed as a deputy sheriff.

22.     Mr. Fowler was shocked and asked the basis for the sudden turn of events. Sheriff Stolle did not articulate any basis or reason for his decision not to re-appoint Mr. Fowler, instead repeating only that Mr. Fowler's "services were simply no longer required." Sheriff Stolle also repeatedly stated that there were no issues with Mr. Fowler's performance and did not cite any deficiencies in Mr. Fowler's work.

23.     At the same time, Sheriff Stolle also immediately placed Mr. Fowler on administrative leave for the remainder of his appointment, which ran until December 31, 2021. Sheriff Stolle insisted that Mr. Fowler had not been "terminated," however, the result was essentially the same in that Sheriff Stolle did not permit Mr. Fowler to work a single shift after the date he was informed that he would not be re-appointed.[1]

---

[1] It is irrelevant for the purposes of this claim whether Mr. Fowler was "terminated" or merely "not reappointed" at the decision of Sheriff Stolle. The Fourth Circuit has expressly held that such a distinction does not affect the constitutionality of a Sheriff's employment decision as "[t]he critical fact for our purposes is that the termination of the Plaintiffs' employment with the Sheriff's Office was not the Plaintiffs' decision." *Bland v. Roberts*, 730 F.3d 368, 374 (4th Cir. 2013), as amended (Sept. 23, 2013).

24.     Historically, when a Sheriff is re-elected to another term, his deputies are re-appointed unless there is a performance issue or some other reason requiring separation.  Plaintiff is not aware of any other Deputies who were not reappointed between the Defendant's terms.

25.     Sheriff Stolle's stated reason for terminating Mr. Fowler's appointment, that the Virginia Beach Sheriff's Office "no longer required" Mr. Fowler's services, is patently false. The Virginia Beach Sheriff's Office was at the time, and still is, severely understaffed and in dire need of manpower.

26.     In 2021 through the present, employers in general, and especially law enforcement agencies, have struggled to recruit and retain qualified officers due to economic factors and the difficulties law enforcement officers face.

27.     The Virginia Beach Sheriff's Office, shortly before parting ways with Mr. Fowler, lowered its minimum hiring age to 18 (from 21) since they could not adequately staff the Office under their previous qualifications criteria.

28.     At the time of the termination of appointment, the Virginia Beach Sheriff's Office had approximately 40 vacancies. Shortly after parting ways with Mr. Fowler, that number grew to 50 sworn officer vacancies, representing approximately 13% of its entire force.

29.     The real reason Sheriff Stolle terminated Mr. Fowler's appointment was because Sheriff Stolle, a Republican, disagreed with the political stances of Mr. Fowler and his wife, who were both Democrats, and desired to retaliate against the Fowlers for certain political positions taken by Del. Convirs-Fowler.

**Political Retaliation**

30.     Before Mr. Fowler's termination, Defendant Stolle had engaged Del. Convirs-Fowler politically on a number of issues.

31.     The first was regarding Defendant Stolle's appointment to a state commission created by the General Assembly to investigate the May 31, 2019, Virginia Beach mass shooting. Del. Convirs-Fowler and then-Del. Jason Miyares sponsored bipartisan legislation to create the commission.

32.      Sheriff Stolle requested to be appointed and was initially appointed by the Senate Rules Committee at his request.

33.     However, the General Assembly legislation which set the criteria for those serving on the commission specifically disallowed any elected official from serving on the commission as their presence might constitute a real or perceived conflict of interest.

34.     When Del. Convirs-Fowler was asked about Sheriff Stolle's appointment in late November 2020, Del. Convirs-Fowler indicated she was surprised Sheriff Stolle was appointed because the criteria set forth in the legislation did not permit elected officials to serve on the committee. This conversation was reported in the local press.

35.     Defendant Stolle publicly responded that he thought Del Convirs-Fowler was "dead wrong" about the eligibility criteria and indicated that the commission needed his experience. This response was also reported in the local press.[2]

36.     Defendant Stolle was subsequently removed from the commission in or about December 2020 because he was ineligible to serve on the commission under the legislation.

---

[2] See, e.g., Virginia Beach sheriff removed from state mass shooting investigation commission, Alissa Skelton, Virginia Pilot, Dec. 4, 2020 1:00 pm, https://www.pilotonline.com/government/local/vp-nw-virginia-beach-mass-shooting-1205-20201204-izkwwnrdonej3naccgbk3gt74e-story.html.

37.     Sheriff Stolle bore resentment towards Mr. Fowler and Del. Convirs-Fowler for what he regarded to be a political embarrassment, even though it was the bipartisan legislation itself that precluded him from serving on the commission.

38.     The second issue was that Defendant Stolle publicly campaigned against Del. Convirs-Fowler's sponsored legislation Virginia House Bill 2198 in 2021.

39.     The third, and most significant, issue concerned the involvement of a Virginia Beach Sheriff's Deputy in the January 6, 2021, Capitol protests.

40.     It was immediately after the following exchange that Defendant Stolle terminated Mr. Fowler's appointment.

41.     On November 24, 2021, Del. Convirs-Fowler asked Sheriff Stolle, "Would you want a heads up if one of your deputies was at the Capitol on January 6th?" Sheriff Stolle replied with a "Yes."

42.     Del. Convirs-Fowler replied, attempting to set up a meeting with Sheriff Stolle.

43.     Several hours later Sheriff Stolle replied that he did not have time to meet but could talk by phone.

44.     After the Thanksgiving holiday, Sheriff Stolle and Del. Convirs-Fowler exchanged voicemails on November 29, 2021, but did not actually speak to each other live.

45.     On November 30, 2021 Sheriff Stolle terminated Mr. Fowler's appointment in retaliation for (1) the political positions and beliefs Mr. Fowler had expressed along with those which Sheriff Stolle perceived Mr. Fowler to have, (2) Del. Convirs-Fowler's political positions and beliefs and those which Defendant perceived Del. Convirs-Fowler to have and (3) Mr. Fowler's marriage to, support of, and association with, his wife, Del. Convirs-Fowler.

**Speech and Political Action**

46.     Defendant believed that Mr. Fowler's political stances were one and the same with his wife's and Defendant took retaliatory actions on this basis.

47.     Prior to the termination, outside of his duties and without creating any disruption to his work, Mr. Fowler engaged in political speech in support of his wife running for office and in support of her political positions.

48.     Mr. Fowler's employer was well aware of his speech in support of his wife.

49.     In fact, Mr. Fowler had to notify his employer of some of his speech to follow the Sheriff's directives.

50.     For instance, in 2021, Mr. Fowler requested permission to appear in a political advertisement for his wife. The advertisement would be filmed in their home. As is typical of political advertisements (including those the VBSO approved for other candidates), the advertisement would show Mr. Fowler in uniform to symbolize Del. Convirs-Fowler's commitment and ability to work in different areas of the community (such as with law enforcement) as a Delegate. As a concession to the VBSO, Mr. Fowler offered that the advertisement would be filmed in a way to omit any identifying marks of the Virginia Beach Sheriff's Office or mention of the Virginia Beach Sheriff's Office so as to prevent any impression that the VBSO endorsed Del. Convirs-Fowler. Mr. Fowler's command rejected his request.

51.     Mr. Fowler abided by the VBSO's directive even though the Sheriff approved deputies appearing in advertising for other candidates under even more generous circumstances than Mr. Fowler requested.

52.     Mr. Fowler abided by the Office's directive and did not appear in the proposed advertisement in uniform or other advertising in uniform when directed not to do so.

53.     Consistent with VBSO policies and within his First Amendment rights, Mr. Fowler did appear in advertising in his personal capacity out of uniform.

54.     The Defendant was aware of Mr. Fowler's appearance in his advertisements supporting his wife during Mr. Fowler's off-duty hours.

**Pre-Termination Retaliatory Treatment**

55.     After his wife first ran for political office as a Democrat in 2017, Mr. Fowler noticed a distinct change in the way the VBSO treated him. He noticed that his behavior was subject to increased scrutiny without cause throughout his wife's first term. Mr. Fowler was terminated shortly after his wife won re-election.

56.     Though his work and performance did not change, and he only had the benefit of more experience in the same roles, Mr. Fowler noticed his annual review scores dropped immediately after his wife's run for office garnered attention in late 2017.

      a.     Mr. Fowler's pre-campaign score in 2016 was 4.5. His pre-campaign score in 2017 was a 4.66 (in ten categories he was achieved a perfect score of 5, the remaining five categories he received a four) before his wife's campaign for the November 2017 election garnered attention at the Sheriff's office.

      b.     After the election, he received a 4.2 in 2018, a 4.1 in 2019, and a 4.1 in 2020. This indicates that Mr. Fowler's supervisors scrutinized him more heavily due to his wife's political positions despite being unable to find any real fault in his performance or integrity.

57.     While on duty at the jail, Mr. Fowler also received a threatening note written onto a piece of his wife's campaign material in 2020.

a. The hostile note was placed on his vehicle in the jail's parking lot during the 2020 election cycle.

b. The timing and placement of the hostile note indicates it was from another VBSO employee at the jail or an associate of a VBSO employee at the jail who knew Mr. Fowler's work schedule and vehicle.

c. Mr. Fowler brought the hostile note to the attention of the Sheriff's Office, which concluded that no action was required in response to the hostile note and that it was impossible to conclude who placed the note since the cameras were not working at the time.

58. Among other examples of retaliation, VBSO's refused to allow Mr. Fowler to transfer to any other division within the Sheriff's Office or jail.

a. It is the practice of the VBSO to rotate duty stations every three to five years to prevent deputies from becoming stagnant in their positions, allow deputies varied experience to enhance their careers, and avoid deputies remaining on less desirable shifts indefinitely.

b. Mr. Fowler submitted multiple requests for transfer to other divisions within the VBSO. Despite the multiple requests and the receiving division specifically requesting Mr. Fowler, Mr. Fowler was denied the opportunity to transfer to any other division at any point over the course of seven years.

c. This kept Mr. Fowler on a more undesirable rotating 12-hour shift, which meant Mr. Fowler had to continually switch between 12-hour overnight and 12-hour day shifts throughout that seven-year period.

d. The Defendant denied Mr. Fowler's requests in breach of regular VBSO practices.

e.  Defendant denied Mr. Fowler's requests through his Captain, who was also the Chair of the Republican Political Party of Virginia Beach, Capt. Tina Mapes.

59.  Though Mr. Fowler quickly rose through the ranks initially, after his wife's run for office in 2017, his career went stagnant. Accordingly, he never rose to the level of a "policymaker" for the Sheriff's Office.

**Plaintiff's Job Duties**

60.  Working exclusively in the jail, Mr. Fowler did not have independent discretion and authority that deputies in some other jurisdictions and agencies have. For instance, Sheriff's deputies in Virginia Beach do not have patrol duties or the discretion to make arrests. That authority is expressly reserved for the Virginia Beach Police Department. Mr. Fowler's actual position and responsibilities were those of a uniformed jailer.

61.  In Virginia, most Sheriff's Offices are the primary law enforcement agency in the Sheriff's locality. That is not true in Virginia Beach, where the Sheriff's Offices are responsible for the jails, the court facilities, and miscellaneous duties, but the Virginia Beach Police Department is the primary law enforcement agency.

62.  Sheriff's Deputies who are not the primary law enforcement agency in a locality have different training and responsibilities than police departments or Sheriff's deputies who are the primary law enforcement agency..

63.  Mr. Fowler attended an academy prior to starting his position with the VBSO. However, like the overwhelming majority of the VBSO deputies, he was trained and certified by the DCJS only for (1) Basic Jailer and (2) Courtroom Security and Civil Process.

64.  Mr. Fowler, along with most deputies at the VBSO, was not DCJS "law enforcement certified" like primary law enforcement and patrol officers would be.

65.     Mr. Fowler's job was solely to maintain order and security in the jail. He was part of the Intake and Release team to book incoming inmates and release inmates when directed. His duties were custodial in nature. He did not exercise responsibilities to patrol or make arrests outside the jail, such responsibility was expressly reserved for Police Department.

66.     Among other duties, the job description for Mr. Fowler's assignment as the "Sergeant assigned to Intake and Release Teams" provided the following duties:

    a. "Supervises the custody of inmate's property and monies;"

    b. "Conducts security checks and search of assigned division;"

    c. "Maintains logs;"

    d. "Enforces institutional rules, regulations and procedures;"

    e. "Only permit authorized persons to enter the building as required;"

    f. "Ensure that security is maintained on inmate records and computer terminals;"

    g. "Coordinate all inmate movement out of the building with the court security and transportation sections as necessary;"

    h. "Release inmates (city, state, and federal) as required by law and under the guidelines. Inmates will not be released without proper paperwork or identification of the person taking custody."

    i. "Ensures the maintenance and cleanliness of his or her assigned division."

67.     Mr. Fowler as part of his job duties also supervised inmate activities, provided supplies to inmates to clean their cells, and supervised laundry detail.

68.     Mr. Fowler also had no discretion, authority, or involvement in any partisan, political or matters of public policy at the VBSO.

69.     Deputies were required to follow detailed directives to accomplish virtually every aspect of the job.

70.     Directives and policy decisions had to be approved by the Captain (head of division).

71.     For example, Mr. Fowler was ordered to, and did, follow policy implemented by the Sheriff and senior leadership regarding processing arrestees with immigration issues and certain questions that the deputies were required to ask.  Mr. Fowler would have done things a different way, asked different questions, or implemented a different policy if he had discretion to do so, but given his lack of discretion or policymaking authority, he followed VBSO policy as it was handed down to him.

72.     In addition, the Sheriff's Office and Police Department in Virginia Beach have a written agreement concerning the responsibilities of each agency. Under that agreement the Police Department is responsible to bring any suspected criminal offender to the Magistrate at the jail. After the hearing if the suspect is to be held, the "suspected criminal offender will be turned over to the custody of the Sheriff at the main correctional facility" so that "the Police officer will be released from custodial duties to perform his/her normal police duties." The intake team at the Sheriff's office, of which Mr. Fowler was a part, was responsible for "effectively performing all aspects of the booking process, including but not limited to fingerprinting; photographing; completing all booking reports . . ." and other duties, but *not* general policing duties.

73.     Mr. Fowler's job duties in his position did not include advising the Sheriff on policy matters, communicating the Sheriff's policies or positions to the public, or utilizing discretion in enforcement and arrests.

74.     The duties of the deputies in the jail and the booking and intake team specifically are such that deputies with different political views would be able to satisfactorily meet the objective and custodial duties and responsibilities that Mr. Fowler's position required.

**Defendant's Knowledge**

75.     The Sheriff knew or should have known that his discriminatory treatment and retaliation against Mr. Fowler was a violation of Mr. Fowler's clearly established constitutional rights, especially in light of the Fourth Circuit's decision in *Bland v. Roberts*, 730 F.3d 368, 393 (4th Cir. 2013).

76.     The Sheriff's retaliatory actions against Mr. Fowler because of his political beliefs, speech, and associations, eventually resulting in Mr. Fowler's termination, occurred in violation of the Sheriff's own Standard Operating Procedures forbidding Sheriff's Office employees in the performance of their duties from expressing "any prejudice concerning race religion, **politics**, national origin, lifestyle or any similar personal characteristic." SOP 02-03-00 (emphasis added).

## <u>COUNT I</u>

### *Wrongful Dismissal and Abridgement of Freedom of Association (Intimate and Expressive) in Violation of the First and Fourteenth Amendments*

77.     Plaintiff incorporates into this Count all allegations set forth in this Complaint as if fully set forth herein.

78.     Generally, public employers, including Sheriffs, are Constitutionally forbidden to discharge a public employee because of the employee's political beliefs or affiliations. *Bland v. Roberts*, 730 F.3d 368, 374 (4th Cir. 2013), <u>as amended</u> (Sept. 23, 2013).

79.     This Count seeks relief for damages arising from violation of Plaintiff's rights guaranteed under the Constitution of the United States, pursuant to 42 U.S.C. § 1983.

80.     On or about November 30, 2021, Defendant Kenneth W. Stolle, acting individually and acting officially in his capacity as Sheriff of Virginia Beach, Virginia, terminated Plaintiff's appointment with the Virginia Beach Sheriff's Office.

81.     The termination of Plaintiff was unlawful, retaliatory, and improper in that Defendant Kenneth Stolle effected this termination because of and in retaliation to Plaintiff's association with Plaintiff's wife, who is an elected official of different political party than Defendant and had voiced political views Defendant did not like.

82.     The termination was also because of or in retaliation for political statements made by Plaintiff's wife.

83.     The termination was in violation of Mr. Fowler's right to associate with members of a particular political party and his own spouse.

84.     As a result, Plaintiff's termination was constitutionally impermissible under the First Amendment, which is applicable and enforceable against state actors under the Fourteenth Amendment.

85.     The actions of Defendant constitute a wrongful and retaliatory discharge of Plaintiff under the First and Fourteenth Amendments of the United States Constitution.

86.     The actions of Defendant further constitute an unlawful discharge in violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983, et seq.

87.     As a direct, actual, and proximate result of the actions taken by Defendant as set forth herein, Plaintiff has suffered significant pecuniary and non-pecuniary damages, including loss of future pay and benefits, loss of back pay and benefits, loss of promotion opportunities, and retirement benefits, as well as mental anguish, anxiety, pain, suffering, humiliation, and loss of quality and enjoyment of life.

## COUNT II

### *Wrongful Dismissal and Abridgement of Free Speech Rights in Violation of the First and Fourteenth Amendments*

88.     Plaintiff incorporates into this Count all allegations set forth in this Complaint as if fully set forth herein.

89.     This Count seeks relief for damages arising from violation of Plaintiff's rights guaranteed under the Constitution of the United States pursuant to 42 U.S.C. § 1983.

90.     The Sheriff was aware of Mr. Fowler's speech on behalf of Plaintiff's wife running for office, such as appearing in her advertisements.

91.     The Sheriff was aware because he made it clear that Mr. Fowler needed the Office's authorization to appear in some of these advertisements.

92.     Mr. Fowler's speech in support of his wife's candidacy for public office were regarding matters of public concern.

93.     On or about November 30, 2021, shortly after Mr. Fowler's wife won re-election, Defendant Kenneth W. Stolle, acting individually and acting officially in his capacity as Sheriff of Virginia Beach, Virginia, terminated Plaintiff's appointment with the Virginia Beach Sheriff's Office.

94.     The termination of Plaintiff was unlawful, retaliatory, and improper in that Defendant Kenneth Stolle effected this termination because Defendant disagreed with what he perceived to be Plaintiff's own political views and affiliation and believed those views constituted disloyalty. As a result, Plaintiff's termination was constitutionally impermissible under the First Amendment, which is applicable and enforceable against state actors under the Fourteenth Amendment.

95.     The actions of Defendant constitute a wrongful and retaliatory discharge of Plaintiff under the First and Fourteenth Amendments of the United States Constitution.

96.     The actions of Defendant further constitute an unlawful discharge in violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983, et seq.

97.     As a direct, actual, and proximate result of the actions taken by Defendant as set forth herein, Plaintiff has suffered significant pecuniary and non-pecuniary damages, including loss of future pay and benefits, loss of back pay and benefits, loss of promotion opportunities, and retirement benefits, as well as mental anguish, anxiety, pain, suffering, humiliation, and loss of quality and enjoyment of life.

## COUNT III

### *Wrongful Dismissal and Abridgement of Freedom of Association (Intimate and Expressive) Rights of Article 1, Section 12 of the Virginia Constitution*

98.     Plaintiff incorporates into this Count all allegations set forth in this Complaint as if fully set forth herein.

99.     This Count seeks relief for damages arising from violation of Plaintiff's rights guaranteed under the Constitution of the Commonwealth of Virginia.

100.    On or about November 30, 2021, Defendant Kenneth W. Stolle, acting individually and acting officially in his capacity as Sheriff of Virginia Beach, Virginia, terminated Plaintiff's employment with the Virginia Beach Sheriff's Office.

101.    The termination of Plaintiff was unlawful, retaliatory, and improper in that Defendant Kenneth Stolle effected this termination because of Plaintiff's association with Plaintiff's wife, who is an elected official of a different political party than Defendant. As a result, Plaintiff's termination was constitutionally impermissible under Article 1 Section 12 of the Constitution of Virginia.

102.    As a direct, actual, and proximate result of the actions taken by Defendant as set forth herein, Plaintiff has suffered significant pecuniary and non-pecuniary damages, including loss of

future pay and benefits, loss of back pay and benefits, loss of promotion opportunities, and retirement benefits, as well as mental anguish, anxiety, pain, suffering, humiliation, and loss of quality and enjoyment of life.

## COUNT IV

### *Wrongful Dismissal and Abridgement of Freedom of Speech*
### *Article 1, Section 12 of the Virginia Constitution*

103.    Plaintiff incorporates into this Count all allegations set forth in this Complaint as if fully set forth herein.

104.    This Count seeks relief for damages arising from violation of Plaintiff's rights guaranteed under the Constitution of the Commonwealth of Virginia.

105.    On or about November 30, 2021, Defendant Kenneth W. Stolle, acting individually and acting officially in his capacity as Sheriff of Virginia Beach, Virginia, terminated Plaintiff's employment with the Virginia Beach Sheriff's Office.

106.    The termination of Plaintiff was unlawful, retaliatory, and improper in that Defendant Kenneth Stolle effected this termination because of Plaintiff's speech and political activities in support of Plaintiff's wife, who is an elected official of a different political party than Defendant. As a result, Plaintiff's termination was constitutionally impermissible under Article 1 Section 12 of the Constitution of Virginia.

107.    As a direct, actual, and proximate result of the actions taken by Defendant as set forth herein, Plaintiff has suffered significant pecuniary and non-pecuniary damages, including loss of future pay and benefits, loss of back pay and benefits, loss of promotion opportunities, and retirement benefits, as well as mental anguish, anxiety, pain, suffering, humiliation, and loss of quality and enjoyment of life.

## COUNT V

### *Wrongful Patronage Dismissal in Violation*
### *of the First and Fourteenth Amendments*

108.    Plaintiff incorporates into this Count all allegations set forth in this Complaint as if fully set forth herein.

109.    This Count seeks relief for damages arising from violation of Plaintiff's rights guaranteed under the Constitution of the United States pursuant to 42 U.S.C. § 1983.

110.    On or about November 30, 2021, Defendant Kenneth W. Stolle, acting individually and acting officially in his capacity as Sheriff of Virginia Beach, Virginia, terminated Plaintiff's employment with the Virginia Beach Sheriff's Office.

111.    The termination of Plaintiff was unlawful, retaliatory, and improper in that Defendant Kenneth Stolle effected the termination of Plaintiff because Plaintiff exercised his right to freedom of association and political association by being married to a sitting member of the Virginia House of Delegates.

112.    As a result, his termination was constitutionally impermissible under the First Amendment, which is applicable to and enforceable against state actors under the Fourteenth Amendment.

113.    The actions of Defendant constitute a wrongful and retaliatory discharge of Plaintiff in violation of the First and Fourteenth Amendments of the United States Constitution.

114.    The actions of Defendant further constitute an unlawful discharge in violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983, et seq.

115.    As a direct, actual, and proximate result of the actions taken by Defendant as set forth herein, Plaintiff has suffered significant pecuniary and non-pecuniary damages, including loss of future pay and benefits, loss of back pay and benefits, loss of promotion opportunities, and

retirement benefits, as well as mental anguish, anxiety, pain, suffering, humiliation, and loss of
quality and enjoyment of life.

## COUNT VI

### *Wrongful Dismissal and Abridgement of*
### *Plaintiff's Right to Marry and is Discrimination on the Basis of Marital Status*

116.    Plaintiff incorporates into this Count all allegations set forth in this Complaint as if fully
set forth herein.

117.    This Count seeks relief for damages arising from violation of Plaintiff's rights guaranteed
under Virginia law. It is asserted under 28 U.S.C. § 1367 and Virginia Code § 2.2-3900 et seq.

118.    On or about November 30, 2021, Defendant Kenneth W. Stolle, acting individually and
acting officially in his capacity as Sheriff of Virginia Beach, Virginia, terminated Plaintiff's
employment with the Virginia Beach Sheriff's Office.

119.    The termination of Plaintiff was discriminatory in that Defendant Kenneth Stolle effected
this termination because Defendant sought to retaliate against Plaintiff's wife and to act against
Plaintiff due to Plaintiff's wife's position as an elected official. As a result, Plaintiff's
termination was constitutionally impermissible under Virginia State law, which may be heard by
this Court by the rules regarding supplemental jurisdiction.

120.    The actions of Defendant constitute a wrongful and retaliatory discharge of Plaintiff in
violation of Virginia Code § 2.2-3900 et seq.

121.    As a direct, actual, and proximate result of the actions taken by Defendant as set forth
herein, Plaintiff has suffered significant pecuniary and non-pecuniary damages, including loss of
future pay and benefits, loss of back pay and benefits, loss of promotion opportunities, and
retirement benefits, as well as mental anguish, anxiety, pain, suffering, humiliation, and loss of
quality and enjoyment of life.

## REQUEST FOR RELIEF

**Wherefore,** Plaintiff respectfully requests that this Court award the following relief for each Count set forth above:

1) Order Defendant to make Plaintiff whole with payment of all pecuniary losses suffered as a result of the events set forth above, including awards of back pay and reinstatement of lost benefits, with pre-judgment and post-judgment interest as applicable;

2) Order Defendant to Reinstate Plaintiff to his position within the VBSO;

3) Order Defendant to make Plaintiff whole by providing compensation for all non-pecuniary damages including emotional pain, suffering, inconvenience, anxiety, loss of quality and enjoyment of life, loss of reputation, loss of career and mental anguish, with pre-judgment and post-judgment interest as applicable;

4) Order Defendant to pay punitive damages in amounts sufficient to prevent this conduct in the future; and

5) Order Defendant to pay Plaintiff all costs and attorney's fees incurred in the prosecution of this action as permitted in civil rights actions under 42. U.S.C. § 1983 as well as the Virginia Human Rights Act

## JURY TRIAL DEMANDED

Plaintiff requests a jury trial on all issues raised in this Complaint.

Respectfully Submitted

**WILLIAM D. FOWLER**
By Counsel

_____ /s/ William R. Thetford Jr. _____

H. Robert Showers, Esq. (VSB 34799)
William R. Thetford, Jr., Esq. (VSB 86265)
Jonathan E. Monroe, Esq. (VSB 95903)
J. Vance Stallings, Esq. (VSB 35934)
SIMMS SHOWERS LLP
305 Harrison St. SE 3rd Floor
Leesburg, VA 20175
Phone: 703-771-4671
Fax: 703-771-4681
hrshowers@simmsshowerslaw.com
wrthetford@simmsshowerslaw.com
jemonroe@simmsshowerslaw.com
jvstallings@simmsshowerslaw.com
*Counsel for Plaintiff*