IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WILLIAM D. FOWLER,

    Plaintiff,

    v.

KENNETH W. STOLLE,

    Defendant.

Case No. 2:22-cv-504

## MEMORANDUM OPINION

This case was tried before a jury on February 13–16, 2024. At the charge conference on February 15, 2024, the Court dismissed Count Five of the Amended Complaint. This Memorandum Opinion memorializes the reasons for that decision.

**I.    BACKGROUND**

Defendant Kenneth Stolle is a former elected Republican Sheriff of the City of Virginia Beach. Plaintiff William "Dave" Fowler is a former deputy sheriff and the husband of a Democratic state delegate. Plaintiff Fowler alleged five claims against Defendant Stolle arising out of Defendant Stolle's failure to reappoint Plaintiff Fowler as a deputy. ECF No. 18 (Amended Complaint). Count One asserted that Defendant Stolle's action violated the First Amendment to the United States Constitution because it was taken in retaliation for Plaintiff Fowler's protected association with this wife. *Id.* at 16–17. Count Two alleged the same, but as to Plaintiff Fowler's right to free speech. *Id.* at 18–19. Counts Three and Four alleged violations of the Virginia Constitution analogous to the violations alleged in Counts One and Two, respectively.

*Id.* at 19–20. Count Five was titled "Wrongful Patronage Dismissal in Violation of the First and Fourteenth Amendments." *Id.* at 21.

Count Five incorporated "all allegations set forth in th[e] Amended Complaint" (ECF No. 18 ¶ 108) and sought "relief for damages arising from violation of Plaintiff's rights guaranteed under the Constitution of the United States" (*id.* ¶ 109). Count Five specifically alleged that "[t]he termination of Plaintiff was unlawful, retaliatory, and improper in that Defendant Kenneth Stolle [a]ffected the termination of Plaintiff because Plaintiff exercised his right to freedom of association and political association by being married to a sitting member of the Virginia House of Delegates." *Id.* ¶ 111.

On the third day of trial, February 15, 2024, the Court informed the parties that, in preparing instructions for the jury, it had encountered a possible issue with Count Five—namely, it was not clear to the Court how Count Five was distinct from the other claims in the Amended Complaint. ECF No. 143 at 4–6. After a brief discussion, the Court directed the parties to be prepared to address the question after the lunch break. *Id.* at 6.

Approximately four hours later, the Court took up the issue again, and plaintiff's counsel stated that he was prepared to speak to whether Count Five should be dismissed. ECF No. 143 at 116. Plaintiff's counsel argued:

> [I]f you look back to [*Elrod*, *Branti*, and *McCaffrey*], they simply state, for a patronage dismissal, that you cannot terminate someone or take adverse action against that person because of their political beliefs. They need not say anything. They need not associate with anyone else in order for it to be a patronage dismissal claim . . . .

2

ECF No. 143 at 117. *See also id.* at 121–22 (plaintiff's counsel adopting the Court's restatement of his argument).

Plaintiff's counsel argued that Count Five was distinct from the other counts because, "to the extent that the jury were to believe that it was not because of his speech and not because of his association with his wife but purely because the [defendant's] knowledge of his *internal beliefs*," the plaintiff could prevail on Count Five despite losing on his other claims. ECF No. 143 at 117 (emphasis added). In essence, plaintiff's counsel contended that Count Five was distinct from the other federal constitutional claims in that it did not require proof of protected conduct by the plaintiff.

## II. LEGAL STANDARD

A claim may be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it "fail[s] to state a claim upon which relief can be granted"—that is, if it "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Byrd v. Gate Petroleum Co.*, 845 F.2d 86, 87 (4th Cir. 1988) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)).

A district court may dismiss *sua sponte* an inadequate claim under Fed. R. Civ. P. 12(b)(6) after affording the party whose claim stands to be dismissed "notice and an opportunity to amend the complaint or otherwise respond." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (internal citations and punctuation omitted); *see also Sheehan v. Saoud*, 650 F. App'x 143, 152 (4th Cir. 2016) (unpublished) (affirming a *sua sponte* dismissal and explaining that a district court

3

"is not required to ignore an obvious failure to allege facts setting forth a plausible claim for relief" merely because the defendant does not raise a motion under Fed. R. Civ. P. 12(b)(6)) (internal citations and quotation marks omitted).[1]

Fed. R. Civ. P. 12(b)(6) "tests the legal sufficiency of a claim." *Tabb v. Bd. of Educ. of Durham Pub. Sch.*, 29 F.4th 148, 155 (4th Cir.), *cert. denied sub nom. Tabb v. Durham Pub. Sch. Bd. of Educ.*, 143 S. Ct. 104 (2022). Thus, courts routinely dismiss claims that are not based upon an independent cause of action[2] and claims that duplicate another cause of action in the same case.[3]

---

[1] The Fourth Circuit has consistently affirmed *sua sponte* dismissals under Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Allran v. Wells Fargo*, 424 F. App'x 198, 200 (4th Cir. 2011) (unpublished per curiam opinion); *United Auto Workers, Loc. No. 5285 v. Gaston Festivals, Inc.*, 43 F.3d 902, 911 (4th Cir. 1995); *Renninger v. Fed. Land Bank of Baltimore*, 8 F.3d 819 (4th Cir. 1993) (unpublished per curiam opinion).

[2] *E.g.*, *Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003) (affirming dismissal of a claim that was "not an independent cause of action"); *Rogers v. Deane*, 992 F. Supp. 2d 621, 624 (E.D. Va. 2014), *aff'd*, 594 F. App'x 768 (4th Cir. 2014) (dismissing a claim that was "not an independent cause of action"); *Bagley v. Wells Fargo Bank, N.A.*, No. 3:12-cv-617, 2013 WL 350527, at *6 (E.D. Va. Jan. 29, 2013) (same).

[3] *E.g.*, *Ctr. for Excellence in Higher Educ., Inc. v. Accreditation All. of Career Sch.*, No. 1:22-cv-1223, 2023 WL 6282840, at *4 (E.D. Va. Sept. 26, 2023) ("the Court may dismiss a declaratory judgment claim that is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action," because "the legal issues will be resolved through the litigation of a different claim") (internal citations and quotation marks omitted); *Sanaa Lifestyle Inc. v. Singh*, No. 119-cv-559, 2020 WL 6776163, at *5 n.7 (E.D. Va. Jan. 6, 2020), *aff'd sub nom. Sanaa Lifestyle Inc. v. Rossi*, 829 F. App'x 612 (4th Cir. 2020) (dismissing constructive fraud claim as duplicative of actual fraud claim after damages were awarded for actual fraud); *United States v. Ndutime Youth & Fam. Servies, Inc.*, No. 3:16-cv-653, 2020 WL 5507217, at *12 (E.D. Va. Sept. 11, 2020) (dismissing as duplicative an individual plaintiff's claims that were superseded by the government intervenor's claims, where the individual still maintained a right to pursue their non-duplicative claims); *Fijalkowski v. Wheeler*, 361 F. Supp. 3d 577, 581 n.1 (E.D. Va. 2019), *aff'd*, 801 F. App'x 906 (4th Cir. 2020)

### III. ANALYSIS

#### A. Notice and Hearing

The defendant did not raise a motion to dismiss Count Five. However, it appeared to the Court that the plaintiff's claim for "wrongful patronage dismissal" was substantively identical to Count One—the federal association claim. Therefore, the Court raised the question *sua sponte*. ECF No. 143 at 4. The Court first articulated the basis for its concern; then it provided plaintiff's counsel an opportunity to research the question. *Id.* at 6; *see Robertson*, 989 F.3d at 290 (notice requirement). Then, plaintiff's counsel affirmatively stated that he was ready to address the issue. ECF No. 143 at 116.

The plaintiff never expressed an interest in further amending his second complaint—rather, he argued that Count Five, as pleaded, should survive because it set forth a cause of action that demanded less proof than Count One demanded. *See Robertson*, 989 F.3d at 290 (requiring "opportunity to amend the complaint or otherwise respond"). The Court fully considered the plaintiff's argument.

---

(dismissing with plaintiff's consent a due process claim that duplicated two other due process claims in the complaint); *Riddick v. Barber*, No. 3:19-cv-71, 2019 WL 6119715, at *7 (E.D. Va. Nov. 18, 2019), *appeal dismissed for lack of jurisdiction*, 822 F. App'x 200 (4th Cir. 2020) (dismissing the plaintiff's Fifth Amendment claim as duplicative of the Fourteenth Amendment claim); *DSF Columbia Ctr., LLC v. Darcey, LLC*, No. 1:15-cv-1626, 2016 WL 11668946, at *1 (E.D. Va. Mar. 14, 2016) (affirming, on a motion for reconsideration, dismissal of a state-law conversation claim as duplicative of a state-law contract claim).

### B. Dismissal of Count Five

The plaintiff contended that Count Five was distinct from Count One because the claim asserted in Count Five—"wrongful patronage dismissal"—required proof of one fewer element than the association claim in Count One. But contrary to the plaintiff's argument, a patronage dismissal claim like the one in *Elrod v. Burns*, 427 U.S. 347 (1976), does require proof of protected conduct: In *Elrod*, that protected conduct was non-association with a particular political party. Had the plaintiff pleaded in Count Five that he was dismissed because he was not associated with the defendant's preferred political party, he would have stated a claim, consistent with *Elrod*, that was distinct from the association claim in Count One. However, because Count One and Count Five both allege that the plaintiff was terminated because of his association with his wife, the two claims are duplicative.

#### i. *Elrod and its progeny do not recognize a cause of action that lacks a protected-conduct element.*

The plaintiff contended that *Elrod v. Burns*, *Branti v. Finkel*, 445 U.S. 507 (1980), and *McCaffrey v. Chapman*, 921 F.3d 159 (4th Cir. 2019), establish an independent cause of action for "wrongful patronage dismissal" that is distinct from the First-Amendment association claim alleged in Count One. The plaintiff argued that such a "wrongful patronage dismissal" claim could succeed without proof of protected conduct—that is, if the jury found that the plaintiff was terminated for his political beliefs alone. ECF No. 143 at 116–17. That was not so. All three cases upon which the plaintiff relied dealt with association or non-association claims, so none establishes a cause of action without a protected-conduct element.

6

### 1. *Elrod v. Burns*

A casual observer might think *Elrod* recognized a cause of action for dismissal from public employment on the basis of one's political beliefs alone. Indeed, the syllabus states that the majority "concluded that a nonpolicymaking, nonconfidential government employee may not be discharged from a job that he is satisfactorily performing, upon the sole ground of his political beliefs." *Elrod*, 427 U.S. at 349 (emphasis added). However, the syllabus is not part of the Supreme Court's opinion, and it is not binding on this Court. At the outset of the *Elrod* opinion, Justice Brennan makes clear: "This case presents the question whether public employees who allege that they were discharged or threatened with discharge solely because of their partisan political *affiliation* or *nonaffiliation* state a claim for deprivation of constitutional rights secured by the First and Fourteenth Amendments." *Id* (emphasis added).

Undoubtedly, the *Elrod* Court was concerned with the effect of patronage upon freedom of political belief; however, the Court implicitly recognized that, in the First Amendment context, belief merges with the conduct that conveys it. The opinion uses the phrase "belief and association" 15 times. It only departs from that rule in one paragraph—where it discusses the risk of "coerced belief." 427 U.S. at 355. But even there, the context makes clear that the mechanism for such coercion is infringement of a right to conduct enumerated in the First Amendment. The relevant paragraph states:

> In order to maintain their jobs, respondents were required to *pledge* their political allegiance to the *Democratic Party*,

> *work for the election* of other candidates of the *Democratic Party, contribute a portion of their wages to the Party*, or *obtain the sponsorship of a member of the Party* . . . . An individual who is a *member of the out-party* maintains affiliation with his own party at the risk of losing his job. He *works for the election of his party's candidates* and espouses its policies at the same risk. The *financial and campaign assistance that he is induced to provide to another party* furthers the advancement of that party's policies to the detriment of his party's views and ultimately his own beliefs, and any assessment of his salary is tantamount to coerced belief. Even a *pledge of allegiance to another party*, however ostensible, only serves to compromise the individual's true beliefs . . . . [T]he individual's ability to *act* according to his beliefs and to *associate with others* of his political persuasion is constrained, and support for his *party* is diminished.

*Elrod*, 427 U.S. at 355–56 (emphasis added on words connoting speech or association).

Most importantly, the *Elrod* plaintiffs alleged that they faced adverse employment action because "they were not *affiliated with or sponsored by the Democratic Party*"—in other words, because they failed to associate with the employer's preferred political party. 427 U.S. at 350 (emphasis added). Put simply, *Elrod* was based on the First Amendment right to free association, so it cannot form the basis for a claim with fewer elements than an association claim.

### 2. Branti v. Finkel

*Branti* was also an association case. It dealt squarely with adverse employment actions taken by members of one political party against members of another political party, on the basis of party affiliation. Thus, *Branti* cannot form the basis for a standalone claim that has no protected-conduct element.

In *Branti*, the district court stated: "The sole grounds for the attempted removal of plaintiffs were the facts that plaintiffs' political beliefs differed from those of the ruling Democratic majority in the County Legislature and that the Democratic majority had determined that Assistant Public Defender appointments were to be made on political bases." 445 U.S. at 510 (quoting *Finkel v. Branti*, 457 F. Supp. 1284, 1293 (S.D.N.Y. 1978) (emphasis added). However, a closer inspection makes clear that both parties viewed *Branti* as an association case—and the Supreme Court embraced that view.

According to the employee-respondents, "[t]he basic issue presented [was] the Constitutional permiss[i]bility of a patronage system which exclude[d] all members of the 'wrong' *political party* solely because of their failure to support the *candidates of the majority party* and their consequent failure to obtain sponsorship by such successfully elected Legislators." Brief for Respondent, at 5, *Branti v. Finkel*, 445 U.S. 507 (1980), (No. 78-1654), 1979 WL 213831, at \*5 (emphasis added). The employer-petitioners agreed with framing the issue in terms of a First Amendment association claim, stating that the employee-respondents "brought suit . . . alleging that they were threatened with the termination of their positions as Assistant Public Defenders solely because of their *affiliation with the Republican Party*." Brief for Petitioner, at 2, *Branti v. Finkel*, 445 U.S. 507 (1980), (No. 78-1654), 1979 WL 213830, at \*2 (emphasis added).

Consistent with that framing, the Supreme Court recited the rule of *Elrod*, including the element of protected conduct: "To prevail in this type of an action, it

9

was sufficient, as *Elrod* holds, for respondents to prove that they were discharged solely for the reason that they were not affiliated with or sponsored by the Democratic Party." *Branti*, 455 U.S. at 517 (internal citation and quotation marks omitted). The *Branti* Court's ruling was about the circumstances under which employment may be conditioned on association with a particular group. *Id.* at 519 ("[T]he continued employment of an assistant public defender cannot properly be conditioned upon his allegiance to the political party in control of the county government.").[4] Accordingly, *Branti* does not recognize a cause of action that lacks the element of protected conduct: It, like *Elrod*, is about association or non-association with a political party.

### 3. *McCaffrey v. Chapman*

In *McCaffrey*, the plaintiff explicitly claimed his political non-reappointment "violated his First Amendment rights to freedom of political association and speech." 921 F.3d at 162. And when referring to the law as established by *Elrod* and *Branti,* the Fourth Circuit noted that an employee's right to "political association" is central. *Id.* at 164. Thus, just like its predecessors in the Supreme Court, *McCaffrey* involved proof of protected conduct, and therefore, it cannot establish a cause of action that lacks that element.

It stands to reason that *Elrod, Branti,* and *McCaffrey* all dealt with claims that required proof of protected conduct—either association or non-association with a political party. The First Amendment cannot protect unexpressed political belief in

---

[4] In the abstract, 'allegiance' could mean belief without action. But allegiance "to a political party" is equivalent to association with that party. *Branti*, 455 U.S. at 519.

the abstract; its force is in the prohibition against laws that curtail the *exercise* of such belief, through "speech" and "assembl[y]." U.S. Const. amend. I. Put differently, every case about a "wrongful patronage dismissal" necessarily turns on the right to free speech, association, or both, because without evidence of any conduct, the plaintiff could never prove that his employer was aware of his belief, much less that an adverse employment decision was taken in response to such belief. What makes such a dismissal 'wrongful' is the fact that it infringes a right to conduct protected by the First Amendment.

Upon careful consideration of the plaintiff's argument, the Court concluded that *Elrod* and its progeny do not recognize a cause of action for "wrongful patronage dismissal" based on political beliefs alone.[5]

### ii.   *Count Five duplicated Count One.*

Counts One and Five both alleged the same theory of liability: that the plaintiff was terminated from public employment because of his protected political association with his wife. The operative paragraph in Count One stated:

> The termination of Plaintiff was unlawful, retaliatory, and improper in that Defendant Kenneth Stolle [a]ffected this

---

[5] Even if the cases did recognize an independent cause of action for political dismissal based on mere beliefs, that is not the claim the plaintiff alleged in the Amended Complaint. Somewhat puzzlingly, Count Five pleaded the very element whose absence the plaintiff claimed made that count distinct from the others: Count Five specifically alleged that "[t]he termination of Plaintiff was unlawful, retaliatory, and improper in that Defendant Kenneth Stolle effected the termination of Plaintiff *because Plaintiff exercised his right to freedom of association and political association* by being married to a sitting member of the Virginia House of Delegates." *Id.* ¶ 111 (emphasis added). Therefore, even if *Elrod* and its progeny do recognize a cause of action for dismissal from public employment based on political beliefs alone, that would not have saved Count Five.

> termination because of and in retaliation to Plaintiff's association with Plaintiff's wife, who is an elected official of [a] different political party than Defendant and had voiced political views Defendant did not like.

ECF No. 18 ¶ 81. The comparable paragraph in Count Five stated:

> The termination of Plaintiff was unlawful, retaliatory, and improper in that Defendant Kenneth Stolle [a]ffected the termination of Plaintiff because Plaintiff exercised his right to freedom of association and political association by being married to a sitting member of the Virginia House of Delegates.

*Id.* ¶ 111. Count One alleged that plaintiff's wife was "an elected official of different political party" than the defendant, while Count Five alleged that the plaintiff's association with his wife constituted "political association," but that is a distinction without a difference. *Id.* ¶¶ 81, 111. As pleaded, both counts alleged that the plaintiff was terminated because of association with the same person: his wife—and for the same reason: her political views.[6] Thus, both counts allege the exact same protected conduct.

---

[6] The plaintiff conceded that he intended Count One to incorporate both the personal and political aspects of his association with his wife, when he agreed to the Court's proposed jury instruction on the elements of Count One. The relevant portion of that instruction stated:

> In this case, Plaintiff Fowler claims that Defendant Stolle, while acting "under color" of state law, intentionally deprived Plaintiff Fowler of his constitutional right(s) to free association and/or free speech by failing to reappoint him, because Plaintiff Fowler exercised his right to free speech, associated with his wife, Delegate Kelly Convirs-Fowler, and/or associated with a specific political party.

The plaintiff seemed to admit that Counts One and Five alleged essentially identical facts. Throughout the Court's discussion with the parties about the viability of Count Five, the plaintiff asserted that the Court would not need to instruct the jury separately as to Count Five—that the instructions on the other counts would suffice. ECF No. 143 at 118. Additionally, the plaintiff conceded that he would not be entitled to recover damages on Count Five if he were to prevail there as well as on Count One. ECF No. 143 at 116 (discussing how Count Five would merge with any other count on which the jury found for the plaintiff); *cf. D.C. v. Fairfax Cnty. Sch. Bd.*, No. 1:22-cv-1070, 2023 WL 4765583, at *7 (E.D. Va. July 25, 2023) (dismissing a duplicative suit, reasoning that allowing both suits to proceed would give the plaintiff "separate bites at the proverbial apple"). Thus, the plaintiff's argument to preserve Count Five truly did turn on his reading of the *Elrod* cases as establishing a cause of action that did not require proof of protected conduct. [7]

---

*See also* ECF No. 143 at 116 (plaintiff's counsel stating that "if someone were to win on a speech claim or an association claim, the patronage claim would probably merge in[to] those").

[7] The plaintiff's misapprehension as to the nature of the claims in *Elrod* and *Branti* may have been rooted in a reading that collapses non-association into political belief. The *Elrod* plaintiffs were terminated not because they held the wrong beliefs, but because they failed to act in support of the employer's preferred political party. 427 U.S. at 355 ("In order to maintain their jobs, respondents were required to pledge their political allegiance to the Democratic Party, work for the election of other candidates of the Democratic Party, contribute a portion of their wages to the Party, or obtain the sponsorship of a member of the Party . . . ."). Then, in *Branti*, the Court explained that *Elrod* did not merely prohibit employers from forcing employees to dissociate from the disfavored political party and associate with the preferred political party instead; it also barred employers from terminating employees who

Nothing in this Memorandum Opinion should be taken to state that a plaintiff could never bring two separate First Amendment claims based on alternative factual theories. Here, the plaintiff pleaded that he was dismissed because of his protected association with his wife, who was a member of the Democratic Party. He could have pleaded those two grounds alternatively: one count might have alleged that the plaintiff was terminated because of his association with his wife, and another might have alleged that he was terminated because of his *own* association with the Democratic Party. *See* n.5, *supra*. Likewise, the plaintiff could have pleaded a third alternative: that he faced adverse employment action because he failed to associate with the Republican Party. *See* n.7, *supra*. All three options would have still required proof of protected conduct (either association or non-association), but pleading in the alternative may have resulted in claims that were not duplicative. However, the plaintiff chose to plead two claims that both alleged the plaintiff was terminated for the exact same association. Thus, any argument that the two counts were directed at

---

failed to obtain "the proper political sponsorship." *Branti*, 445 U.S. at 516. In other words, *Elrod* and *Branti* recognized a protection for political non-association.

The plaintiff did not argue this interpretation of the cases, and he never contended that Count Five was distinct from Count One on the grounds that one was an association claim and the other a non-association claim. However, because the plaintiff did assert that Count Five was distinct because it tracked *Elrod* and *Branti*, the Court considered whether Count Five could be preserved on a theory the plaintiff did not advance. Had the plaintiff pleaded Count Five as a non-association claim— that is, had he alleged that he was terminated because he did not associate with the Republican Party—then Count Five would have survived. But that is not what he pleaded. Instead, as explained above, Count Five alleged that the plaintiff was terminated because of his affirmative association with his wife. That claim was different from the claim in *Elrod*, and it duplicated Count One.

14

different forms of association would have failed, based upon the way the plaintiff framed Counts One and Five in the Amended Complaint.

After carefully reviewing the plaintiff's argument, the cases upon which it was based, and the language of the Amended Complaint, the Court concluded that Count Five stated an association claim that duplicated Count One. Because no independent relief could be granted as to Count Five, the Court found that Count Five was legally insufficient. Fed. R. Civ. P. 12(b)(6); *Tabb*, 29 F.4th at 155.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DISMISSED** Count Five of the Amended Complaint. ECF No. 18.

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion to all counsel of record.

**IT IS SO ORDERED.**

/s/
Jamar K. Walker
United States District Judge

Norfolk, Virginia
March 7, 2024