IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WILLIAM D. FOWLER,

     Plaintiff,

     v.

KENNETH W. STOLLE, *individually and in his official capacity as Sheriff of the City of Virginia Beach, Virginia,*

     Defendant.

Case No. 2:22-cv-504

## MEMORANDUM OPINION & ORDER

Former Deputy Sheriff William D. Fowler—a Democrat and the husband of a Democratic member of the Virginia General Assembly—sued the Republican former Sheriff of Virginia Beach, Virginia, Kenneth W. Stolle, after he failed to reappoint the plaintiff as a deputy. The plaintiff alleged the non-reappointment violated his state and federal constitutional rights to free speech and association. After a four-day trial, the jury found in the plaintiff's favor on the association claims but returned a defense verdict on the speech claims.

Both parties filed extensive post-trial motions requesting that the Court grant judgment as matter of law in their favor. Specifically, the defendant asks the Court to find that he prevailed as a matter of law on the association claims and, regardless, that qualified immunity precludes the plaintiff's recovery. ECF No. 151. The plaintiff moves for judgment as a matter of law on the speech claims, a new trial on causation

and damages as to those claims, and a permanent injunction to reinstate him as a deputy. ECF Nos. 154, 157.[1] For the reasons stated herein, the Court finds as follows:

- The law establishing the plaintiff's rights was not clearly established, so qualified immunity applies. Therefore, the defendant's motion (ECF No. 151) will be **GRANTED.**

- Judgment as a matter of law is appropriate on the question of whether the plaintiff engaged in speech protected by the First Amendment, but that does not entitle him to judgment on liability as to the speech claims generally, so the plaintiff's motion for judgment as a matter of law and a new trial (ECF No. 154) will be **GRANTED IN PART** and **DENIED IN PART.**

- As the balance of the equities weighs against the plaintiff's requested relief, his motion for a permanent injunction (ECF No. 157) will be **DENIED.**

## I.    BACKGROUND

At trial, the Court provided the jury a special verdict form. ECF No. 135. As to the speech claims, the jury answered no to the first question: "Did Plaintiff Fowler engage in speech protected by the First Amendment to the Constitution?" ECF No. 135. Based on that answer, the special verdict form then instructed the jury to "stop." *Id.*

As to the association claims, the jury answered the following questions in the affirmative:

- Was Defendant Stolle's decision not to reappoint Plaintiff Fowler "under color" of state law?

---

[1] The Court has considered the arguments in the parties' briefing and concluded there is no need to hold a hearing on the motions. *See* Fed. R. Civ. P. 78(b); E.D. Va. Civ. R. 7(J).

- Did Plaintiff Fowler prove that he engaged in association protected by the First Amendment to the Constitution?

- Did Plaintiff Fowler prove that his protected association was a substantial or motivating factor in Defendant Stolle's decision not to reappoint him?

And the jury answered the following questions in the negative:

- Did Defendant Stolle prove that he would have discharged Plaintiff Fowler from his employment even if Defendant Stolle had not taken Plaintiff Fowler's protected association into account?

- Did Defendant Stolle prove that he was permitted to discharge Plaintiff Fowler on the basis of his protected association because Plaintiff Fowler held a policymaking position?[2]

ECF No. 135.

With the question of qualified immunity still open, *see* ECF No. 93 (denying summary judgment), the Court also gave the jury 19 special interrogatories designed to identify what, if any, commonalities existed between Plaintiff Fowler's job responsibilities and the job responsibilities of other plaintiffs who have brought similar claims in cases the Fourth Circuit has decided.[3] ECF No. 135-1.

_____

[2] The jury was thoroughly instructed on the meaning of "policymaking" as a term of art. ECF No. 144 at 39:5–42:25.

[3] Though granting qualified immunity is a legal determination, "a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided" by the jury. Special interrogatories, "restricted to the who-what-when-where-why type of historical fact issues," are "a tool used to apportion the jury and court functions relating to qualified immunity in cases that go to trial." *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir. 2002).

## II.   LEGAL STANDARDS

### A.   Renewed Motions for Judgment as a Matter of Law

If the court does not grant a motion for judgment as a matter of law made
before a case is submitted to a jury, the movant may renew the motion "[n]o later
than 28 days after the entry of judgment—or if the motion addresses a jury issue not
decided by a verdict, no later than 28 days after the jury was discharged." Fed. R.
Civ. P. 50(b). "When the loser of a jury trial challenges the verdict under [Fed. R. Civ.
P.] 50(b), the question is whether a jury, viewing the evidence in the light most
favorable to the winning party, could have properly reached the conclusion reached
by this jury." *Wiener v. AXA Equitable Life Ins. Co.*, 58 F.4th 774, 784 (4th Cir. 2023)
(cleaned up). The court must construe all disputed facts and make all reasonable
inferences in favor of the party who prevailed at trial, *id.*, and grant the motion only
if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that
party on that issue." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149
(2000). Thus, the movant cannot prevail by "merely show[ing] that reasonable minds
could differ as to the jury's findings." *Duvall v. Novant Health, Inc.*, 95 F.4th 778, 788
(4th Cir. 2024) (citation and quotation marks omitted).

### B.   First Amendment Claims Alleging Wrongful Termination

If a government employer takes adverse action against an employee "out of a
desire to prevent the employee from engaging in political activity that the First
Amendment protects, the employee is entitled to challenge that unlawful action
under the First Amendment and 42 U.S.C. § 1983 . . . ." *Heffernan v. City of Paterson,*

4

*N.J.*, 578 U.S. 266, 273 (2016). A plaintiff who brings a claim under 42 U.S.C. § 1983 must establish "the violation of a right secured by the Constitution and laws of the United States . . . by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see* 42 U.S.C. § 1983. The proof required to demonstrate violation of a right depends on the right at issue.

### i.  *Speech Claims*

"[T]he First Amendment protection of a public employee's speech depends on a careful balance between the interests of the employee, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Lane v. Franks*, 573 U.S. 228, 231 (2014). Thus, a claim for wrongful termination based on constitutionally protected speech requires proof that: "(1) [the plaintiff] spoke as a citizen on a matter of public concern, rather than as an employee on a matter of personal interest; (2) the employee's interest in [their] expression outweighed the employer's interest in providing effective and efficient services to the public; and (3) the employee's speech was a substantial factor in the adverse employment action." *Massaro v. Fairfax Cnty.*, 95 F.4th 895, 905 (4th Cir. 2024) (citation and quotation marks omitted).

### ii.  *Political Association and Patronage Claims*

"Generally, the First Amendment's right to freedom of political association prohibits government officials from terminating public employees solely for supporting political opponents." *McCaffrey v. Chapman*, 921 F.3d 159, 164 (4th Cir.

2019). The Fourth Circuit's "causation analysis for the association claims is the same as for the speech claims":

> The plaintiff bears the initial burden of proving that [their] exercise of [their] First Amendment rights was a substantial or motivating factor in the employer's decision to terminate [them]. And if the plaintiff satisfies that burden, the defendant will avoid liability if [they] can demonstrate, by a preponderance of the evidence, that [they] would have made the same employment decision absent the protected expression.

*Bland v. Roberts*, 730 F.3d 368, 375 (4th Cir. 2013), *as amended* (Sept. 23, 2013).

However, "there are many government jobs for which party affiliation is an appropriate requirement." *Stott v. Haworth*, 916 F.2d 134, 142 (4th Cir. 1990) (citing *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 74 (1990)). "[U]nder the *Elrod-Branti* exception, certain public employees can be terminated for political association in order to give effect to the democratic process." *McCaffrey*, 921 F.3d at 164 (citing *Elrod v. Burns*, 427 U.S. 347 (1976) and *Branti v. Finkel*, 445 U.S. 507 (1980)); *see Rutan*, 497 U.S. at 74 ("A government's interest in securing employees who will loyally implement its policies can be adequately served by choosing or dismissing certain high-level employees on the basis of their political views.").

To determine whether the *Elrod-Branti* exception applies, courts in the Fourth Circuit apply a two-part test. First, the court must determine "whether the position at issue, no matter how policy-influencing or confidential it may be, relates to partisan political interests or concerns." *Stott*, 916 F.2d at 141 (quoting and adopting *Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 241–42 (1st Cir. 1986) (*en banc*)) (other citations omitted). Second, the court must "examine the particular

6

responsibilities of the position to determine whether it resembles a policymaker, a privy to confidential information, a communicator, or some other office holder whose function is such that party affiliation is an equally appropriate requirement." *Stott*, 916 F.2d at 142 (citation omitted). This second inquiry focuses on "the powers inherent in a given office," not "the functions performed by a particular occupant of that office." *Id.*

### D.   Qualified Immunity

Qualified immunity protects government officials performing discretionary functions in their official capacities from civil damages in a § 1983 action insofar as their conduct does not violate clearly established law. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021); *Ziglar v. Abbasi*, 582 U.S. 120, 150 (2017). "In determining whether a defendant is entitled to qualified immunity, a court must decide (1) whether the defendant has violated a constitutional right of the plaintiff and (2) whether that right was clearly established at the time of the alleged misconduct." *Bland*, 730 F.3d at 391.

In other words, this analysis requires two steps: First, a determination, under the Fed. R. Civ. P. 50 standard, that the defendant violated a constitutional right; and second, a purely legal determination as to whether the law establishing that violation was clearly established. *See Vanderhoef v. Dixon*, 938 F.3d 271, 276 (6th Cir. 2019) (in the context of a post-trial motion for a finding of qualified immunity, the court must determine: "(1) taken in the light most favorable to the party asserting the injury, do the facts . . . show the officer's conduct violated a constitutional right,

and (2) was the right clearly established to the extent that a reasonable person in the officer's position would know that the conduct complained of was unlawful."); *see also Humes v. Jones*, 109 F.4th 1112, 1116 (8th Cir. 2024) (declining to review the district court's conclusion that "a reasonable jury could find" an Eighth Amendment violation based on the trial evidence).

"A right is clearly established when it is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Rivas-Villegas*, 595 U.S. at 5 (quotation marks and citation omitted). "Although [the Supreme Court's] case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (citation and quotations marks omitted). The district court's inquiry into whether the constitutional question is 'beyond debate' "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* (citation and quotation marks omitted). The "clearly established" standard is a difficult one to meet: "The requirement, after all, is that the law be clearly established, not simply possibly established or even probably established." *Swanson v. Powers*, 937 F.2d 965, 968 (4th Cir. 1991).

"[P]articularly in First Amendment cases, where a sophisticated balancing of interests is required to determine whether the plaintiff's constitutional rights have been violated, only infrequently will it be clearly established that a public employee's speech on a matter of public concern is constitutionally protected." *McVey v. Stacy*, 157 F.3d 271, 277 (4th Cir. 1998) (internal citations omitted).

If the defendant maintains a qualified immunity defense at trial, "the decisive question, ordinarily, is whether the evidence favoring the party seeking relief is legally sufficient to overcome the defense." *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011). Once the case is tried, "the defense must be evaluated in light of the character and quality of the evidence received in court." *Id.*

### E.     Motions for New Trials

Whether to grant a motion for a new trial is a matter for the district court's discretion. *Mountain Valley Pipeline, LLC v. 8.37 Acres of Land by Terry*, 101 F.4th 350, 358 (4th Cir. 2024) (citation omitted). The court "has a duty to order a new trial if [it is] required in order to prevent injustice." *Ramaco Res., LLC v. Fed. Ins. Co.*, 74 F.4th 255, 266 (4th Cir. 2023) (cleaned up); *see also* Fed. R. Civ. P. 59(a)(1)(A). "When considering a motion for a new trial under Rule 59, a trial judge may weigh the evidence and consider the credibility of the witnesses." *Mountain Valley Pipeline*, 101 F.4th at 358 (citation and quotation marks omitted).

### F.     Motions for Permanent Injunctions

"A party seeking a permanent injunction must [first] demonstrate actual success on the merits." *Mayor of Baltimore v. Azar*, 973 F.3d 258, 274 (4th Cir. 2020) (quoting *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)) (quotation marks omitted). Then the movant must show that "(1) [they have] suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the

public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)*; Mayor of Baltimore*, 973 F.3d at 274. "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay*, 547 U.S. at 391; *Mayor of Baltimore*, 973 F.3d at 274.

## III.   ANALYSIS

### A.   The Defendant's Motion for Judgment as a Matter of Law and Finding of Qualified Immunity

The defendant's motion raises two arguments: (1) the evidence was legally insufficient to establish the causation element of the plaintiff's association claims, ECF No. 152 at 2–8; and (2) if the plaintiff did prove his case, the defendant is nonetheless entitled to qualified immunity, *id.* at 8–16. The Court will address each contention in turn.[4]

#### i.   *Causation*

The defendant is not entitled to judgment based on causation, because a reasonable jury could have concluded, as this jury did, that the plaintiff's association with the Democratic Party "was a substantial or motivating factor" in the defendant's

---

[4] The defendant moved for judgment as a matter of law before the case was submitted to the jury, and the Court reserved ruling on the motion. ECF No. 143 at 93:12–111:21 (initial motion after the plaintiff's case in chief), 233:3–235:8 (renewal after the close of evidence), 112:25–113:2 (reserving after the plaintiff's case), 235:10–18 (reserving at the close of evidence). Counsel again renewed the motion after the jury returned their verdict. ECF No. 144 at 111:2–4. The Court reserved ruling again and directed the parties to file supplemental briefing on their positions pursuant to Fed. R. Civ. P. 50(b). *Id.* at 111:5–9. The jury was discharged on February 15, 2024, and the defendant filed the instant motion 26 days later. ECF No. 144 at 110:3–16; ECF No. 151. Thus, the defendant's motion is procedurally proper. *See* Fed. R. Civ. P. 50(b).

decision not to reappoint him and that the defendant did not sufficiently "demonstrate . . . that he would have made the same employment decision" if the plaintiff had not engaged in the protected conduct. *Bland*, 730 F.3d at 375; *see Wiener*, 58 F.4th at 784. The defendant argues that "[t]he jury was not presented with any evidence that [the defendant's] decision not to reappoint [the] plaintiff was predicated on [the] plaintiff's association with his wife or that [the] plaintiff's association with his wife was even a factor in the [defendant's] decision." ECF No. 152 at 7.[5] That is not so.

Preliminarily, the defendant's framing is incorrect: "[T]he plaintiff's marriage" is not the issue. ECF No. 152 at 2 (arguing there was no evidence at trial "that the plaintiff's marriage to Del. Convirs-Fowler was [] a factor in [the defendant's] decision" not to reappoint the plaintiff). The question is whether a reasonable jury could have found causation based on the plaintiff's *political* association. So what matters is not whether the defendant's conduct was motivated by the plaintiff's association with his wife *qua* wife, but rather whether the defendant's association with *a Democrat*—his wife or anyone else—was a substantial or motivating reason he was not reappointed. And a reasonable jury could have found that it was.

The defendant asserts that "the evidence did not support [the jury's] finding" as to causation because the evidence "established that [the defendant] maintained a pleasant, working relationship with Del. Convirs-Fowler." ECF No. 152 at 2. And the

---

[5] This Court cites to the page numbers assigned by CM/ECF rather than to documents' internal pagination.

defendant's brief goes on to quote sections of testimony that tend to support that theory. *Id.* at 3–7. But the jury was also presented with evidence to the contrary.

For example, the defendant acknowledged that he had previously "described the Sheriff's Office . . . as being [R]epublican-dominated" and stated that he believes "diversity . . . in politics" is not "a good idea in [his] Sheriff's Office." ECF No. 142 at 210:16–19, 177:4–25. Though the defendant claimed plaintiff's counsel took that statement "out of context," *id.* at 177:12; *see id.* at 210:19–20 ("it's part of a . . . bigger sentence"), the Court must construe all disputed facts and make all reasonable inferences in favor of the plaintiff. *Wiener*, 58 F.4th at 784. And a reasonable jury could conclude, based on those statements, that the defendant's choice was motivated by a belief that it was not "a good idea" to have the plaintiff working in his office because the plaintiff was associated with the Democratic Party. ECF No. 142 at 177:8.

Additionally, the defendant testified that the reason he terminated the plaintiff's employment was because the plaintiff disobeyed an order not to appear in a campaign ad for Del. Convirs-Fowler—a Democrat—and that he "didn't care whether [the plaintiff] authorized" Del. Convirs-Fowler to use the plaintiff's image in the ad "or not." ECF No. 142 at 197:12–198:6. Based on that testimony, a reasonable jury could conclude that the defendant chose not to reappoint the plaintiff as a deputy because the plaintiff was associated with a Democrat—and that the defendant admitted as much.

Finally, a reasonable jury could conclude that the plaintiff's primary use to the defendant was as a tool to manipulate Del. Convirs-Fowler. *See*, *e.g.*, ECF No. 142 at

12

227:16–23 (Del. Convirs-Fowler promised to "do what [the defendant] wanted her to do as long as [the defendant] looked out for her husband"), 225:14–226:22 (the defendant thanked Del. Convirs-Fowler after she, at his direction, abstained from voting on a qualified immunity bill, which "tip[ped]" the vote count in the direction the defendant wanted). In a dramatic bit of testimony that became a cornerstone of the plaintiff's case, the defendant asserted that the plaintiff "can't control his wife." ECF No. 142 at 198:3. Making all reasonable inferences in the plaintiff's favor, the Court finds that a reasonable jury considering these facts could conclude that the defendant fired the plaintiff primarily because of the plaintiff's association with Del. Convirs-Fowler—a Democrat whom the defendant thought needed to be "control[led]." ECF No. 142 at 198:3.

Reasonable jurors might disagree as to whether the plaintiff's association with the Democratic Party, or with a particular elected official who is a Democrat, was "a substantial or motivating factor" in the defendant's decision not to reappoint the plaintiff, but that does not render this jury's verdict legally invalid. *Bland*, 730 F.3d at 375; *see Duvall*, 95 F.4th at 788. Finding a "legally sufficient evidentiary basis for a reasonable jury to find for [the plaintiff]" on the issue of causation, the Court must deny the defendant's motion for judgment as a matter of law on this point. *Reeves*, 530 U.S. at 149.

### ii.    *Qualified Immunity*

The defendant is entitled to qualified immunity on the association claims because whether the *Elrod-Branti* exception permitted the defendant to choose not to reappoint the plaintiff based on the plaintiff's protected association is not "clearly established." *Rivas-Villegas*, 595 U.S. at 8; *Stott*, 916 F.2d at 141.[6]

### 1.    *Constitutional Violation*

In Counts One and Three, the plaintiff claimed the defendant violated his First Amendment right to freedom of association by terminating his employment because of his political affiliation, either with the Democratic Party or with one particular Democrat—Del. Convirs-Fowler. ECF No. 1 ¶¶ 81–85, 101. At this stage, the Court's inquiry into the existence of a constitutional violation takes the form an assessment of the sufficiency of the evidence under Fed. R. Civ. P. 50. *See Vanderhoef*, 938 F.3d at 276; *Humes*, 109 F.4th at 1116. The Court finds that the trial evidence, viewed in the light most favorable to the plaintiff, was sufficient to enable a reasonable jury to find that the defendant violated the plaintiff's First Amendment right to freedom of association. *See Wiener*, 58 F.4th at 784. The defendant only contests the sufficiency of the evidence as to the causation element. *See* ECF No. 152 at 2–8. For the reasons explained in Part III.A.i,, *supra*, the jury's verdict on that issue was proper.

---

[6] There appears to be no dispute as to whether the defendant's action in choosing not to reappoint the plaintiff was a "discretionary function[] performed in [his] official capacit[y]." *Ziglar*, 582 U.S. at 150. Thus, the Court will address only whether the plaintiff established a constitutional violation and whether the law the defendant violated was clearly established.

Therefore, the Court will proceed to the purely legal segment of the qualified immunity assessment.

### 2.    *Clearly Established Law*

It is possible that almost nothing in this area of the law is clearly established. *Cf.* 28 U.S.C. § 2254(d)(1) (restricting "clearly established Federal law" in the habeas context to Supreme Court jurisprudence); *see also Williams v. Taylor*, 529 U.S. 362, 365 (2000) (refining this standard to include "holdings" but not "dicta"). But even if courts of appeals can clearly establish law in the First Amendment context, the Fourth Circuit has not done so with respect to whether the *Elrod-Branti* exception applies to a deputy with Plaintiff Fowler's specific job responsibilities.

*Knight v. Vernon*, 214 F.3d 544 (4th Cir. 2000), and *Bland v. Roberts*, 730 F.3d 368, 378 (4th Cir. 2013), come closest to clearly establishing law in this area.[7] In both

---

[7] The Fourth Circuit's two other major *Elrod-Branti* cases about sheriffs, *Jenkins v. Medford*, 119 F.3d 1156, 1162 (4th Cir. 1997), and *McCaffrey v. Chapman*, 921 F.3d 159 (4th Cir. 2019), are slightly less instructive, because both dealt with motions to dismiss under Fed. R. Civ. P. 12(b)(6). (*Jenkins* reversed denial of such a motion, and *McCaffrey* affirmed a grant.). But together, these two cases demonstrate that a deputy who is "engaged in law enforcement functions on behalf of the sheriff" has no constitutional claim when they are fired for supporting the sheriff's political opponent. *McCaffrey*, 921 F.3d at 167. The jury in the instant case found that Plaintiff Fowler was "sworn to engage in law enforcement functions on behalf of the Sheriff." ECF No. 135-1 #8; *Jenkins*, 119 F.3d at 1165.

Two other findings in the instant case also align with *Jenkins* and *McCaffrey*:

- The plaintiff "[e]xercise[d] significant discretion;" ECF No. 135-1 #2; *see McCaffrey v. Chapman*, 921 F.3d 159, 165 (4th Cir. 2019) ("Deputy sheriffs on patrol exercise significant discretion and make decisions that create policy"); *see also* ECF No. 135-1 #17 (finding that the

cases, the district court granted summary judgment in favor of defendant-sheriffs on the basis of the *Elrod-Branti* exception. In *Knight*, the Fourth Circuit reversed and remanded for trial, finding that the deputy was not the type of policymaking employee who could be fired based on their political association. 214 F.3d at 553. The *Bland* Court likewise held that the *Elrod-Branti* exception did not apply to a group of plaintiffs whose duties were "near[ly] ident[ical]" to Plaintiff Knight's, *Bland*, 730 F.3d at 378, though it still affirmed the district court's grant of summary judgment on the basis of qualified immunity, *id.* at 394.

This Court is reluctant to view *Knight* and *Bland* as clearly establishing a set of job responsibilities that would protect a defendant under the *Elrod-Branti*

---

plaintiff had a "law enforcement" role "around the City of Virginia Beach"); and

- The Sheriff "rel[ied] on [the plaintiff] to foster public confidence in law enforcement," ECF No. 135-1 #3; *see McCaffrey*, 921 F.3d at 165 (quoting *Jenkins v. Medford*, 119 F.3d 1156, 1162 (4th Cir. 1997).

But the jury also found facts that distinguish the plaintiff in the instant case from from the plaintiffs in *Jenkins*:

- The plaintiff did not "play a special role in implementing [the defendant's] policies and goals," ECF No. 135-1 #1; *Jenkins*, 119 F.3d at 1162;

- The defendant "rel[ied] on [the plaintiff] to foster public confidence in law enforcement," ECF No. 135-1 #3; *Jenkins*, 119 F.3d at 1162; and

- The defendant did not rely on the plaintiff to "provide him with the truthful and accurate information [he] needed to do his job," *Jenkins*, 119 F.3d at 1162; *see* ECF No. 135-1 #7.

exception because, understood in the context of the procedural posture, the upshot of both cases was that *Elrod-Branti might* have permitted the defendants to fire their employees based on political association, but the facts presented did not justify judgment in the defendants' favor as a matter of law.

Even if *Knight* and *Bland* do constitute clearly established law, the Court cannot find that the defendant violated it. The jury found three facts that distinguish the instant case from those cases. Unlike *Knight* and the most comparable plaintiffs in *Bland*, Plaintiff Fowler was:

- "involved in communicating the Sheriff's policies or positions to the public," ECF No. 135-1 #4; *Bland*, 730 F.3d at 378; *Knight*, 214 F.3d at 550;

- "engag[ed] in law enforcement activities around the City of Virginia Beach on behalf of the Sheriff," ECF No. 135-1 #17; *Bland*, 730 F.3d at 378 (plaintiffs were not "out in the county engaging in law enforcement activities on behalf of the sheriff"); *Knight*, 214 F.3d at 550 (same); and

- had "general powers of immediate arrest," ECF No. 135-1 #9; *see Knight*, 214 F.3d at 550); *Bland*, 730 F.3d at 372.[8]

---

[8] The jury found that Plaintiff Fowler, like the most comparable plaintiffs in *Bland*, actually made "only incidental arrests," and exercising his arrest powers was not "an appreciable part of . . . his particular position." ECF No. 135-1 #10–11; *see Bland*, 730 F.3d at 372, 379. However, *Stott*'s mandate to focus on "the powers inherent in a given office," not "the functions performed by a particular occupant of that office" render it irrelevant, for purposes of the *Elrod-Branti* analysis, that the plaintiff did not always exercise all the authority he had. *Stott*, 916 F.2d at 142.

The jury also found that the plaintiff was "certified by taking the Basic Law Enforcement Course." ECF No. 135-1 #15; *Bland*, 730 F.3d at 372; *see also Knight*, 214 F.3d at 546 n.1 (plaintiff never certified to become a sworn deputy). However,

The jury also found numerous facts that align Plaintiff Fowler's position with that of the deputies discussed in *Knight* and *Bland*, who were not subject to termination under the exception. Specifically:

- The plaintiff took "the Basic Jailer and Court Services course," *Bland*, 730 F.3d at 372; ECF No. 135-1 #16, and his "training concentrated on matters of custodial care and supervision," *Knight*, 214 F.3d at 550; ECF No. 13-1 #14.

- The plaintiff "did not make policy," "did not advise [the defendant] on policy matters," and "was not consulted about jail policy" specifically. *Knight*, 214 F.3d at 550–51; *see* ECF No. 135-1 #6, 12, 13.

- The plaintiff had "the responsibilities of a jailer," and those responsibilities were "routine and limited." ECF No. 135-1 #18–19; *see Knight*, 214 F.3d at 550 ("The responsibilities of a jailer . . . are routine and limited in comparison to those of a deputy sheriff, who may be fired for his political affiliation.").

But the Fourth Circuit has not dictated how much weight to give any individual job responsibility in the *Elrod-Branti* analysis. So even though the jury concluded the plaintiff's position made him the type of employee who cannot be fired because of their political association, that is not the case *as a matter of law*. And the Court certainly cannot determine that "every reasonable official would have understood" that the plaintiff was not subject to the *Elrod-Branti* exception. *Rivas-Villegas*, 595 U.S. at 5. (internal citation omitted).

---

there was no evidence at trial to support this conclusion. Therefore, the Court has disregarded it.

When the Court looks at the existing law, it is evident that the plaintiff's specific job responsibilities place him in an in-between zone the Fourth Circuit has not fully defined. The Court cannot firmly place him in the category of a jailer like Plaintiff Knight or the comparable *Bland* plaintiffs, nor can it place him at the other end of the spectrum as a policymaker. As a result, the Court cannot conclude that a person in the defendant's position would know that terminating someone like Plaintiff Fowler would be unlawful. Accordingly, the Court must grant the defendant's motion for judgment as a matter of law on the basis of qualified immunity.[9]

---

[9] The Court is bound to reach this decision, but the outcome is ludicrous. There are many things about the judge-made doctrine of qualified immunity that are unjust, not least that it puts "government agents [] at liberty to violate your constitutional rights *as long as they do so in a novel way.*" *Green v. Thomas*, No. 3:23-cv-126, 2024 WL 2269133, at *1 (S.D. Miss. May 20, 2024) (observing that "qualified immunity is an unconstitutional error"). The instant case illustrates yet another reason the doctrine has got to go.

Qualified immunity leaves no room for evidence that a § 1983 defendant actually, subjectively knew that their conduct violated the law. Thus, it creates a scheme under which government officials can deliberately violate the United States Constitution, knowing that an *extra*constitutional rule will protect them from accountability.

That appears to be what happened here.

The defendant himself is an attorney. ECF No. 142 at 165:18–19. He knows what qualified immunity is, and he was "adamantly opposed" to reforming it—so much so that he used his influence as the employer of the husband of a state delegate to convince that state delegate to "tip" a vote on a qualified immunity bill in favor of his preferred outcome. *See id.* at 225:14–226:22.

Before he terminated the plaintiff's employment, the defendant contacted Jeff W. Rosen—an attorney who taught a course at "sheriffs school" and who would eventually represent the defendant at trial. Mr. Rosen had taught the defendant not to give a reason if he were going to fire someone. *See* ECF No. 142 at 232:13–19

**B. The Plaintiff's Motion for Judgment as a Matter of Law and a New Trial on the Speech Claims**

The jury found that the plaintiff did not "engage in speech protected by the First Amendment." ECF No. 135 #11. As a result, it did not render a verdict as to the remaining elements of the plaintiff's speech claims, and the Court entered judgment

---

(defendant's testimony, elicited by Mr. Rosen). And when the defendant contacted him before firing the plaintiff, Mr. Rosen again "advised [the defendant] not to give a reason." *Id.* at 191:23–192:1. But the defendant ultimately *did* give a reason when he spoke to a *different* attorney—and he later called that attorney as a witness, to testify that he had obtained approval to dismiss the plaintiff for that given reason. ECF No. 143 at 207:7–9 (Senior Assistant City Attorney testifying the defendant told her he planned not to reappoint the plaintiff because he had "disobeyed a direct order").

The jury concluded that the plaintiff's "protected association was a substantial or motivating factor in [the defendant's] decision not to reappoint him" and that the defendant did not "prove that he would have discharged [the plaintiff]" regardless of that protected association. ECF No. 135 #3–4. In other words, the jury found that the defendant did not fire the plaintiff for "disobey[ing] a direct order," as he claimed to the Senior Assistant City Attorney. ECF No. 143 at 207:7–9. In making that decision, the jury was empowered to "consider whether the reason[] the defendant gave for [his] decision"—the one he told the City Attorney after consulting with Mr. Rosen— was "mere pretext." ECF No. 144 at 39:1–2 (jury instruction).

But the Court cannot consider that.

Under the qualified immunity doctrine, it does not matter whether the defendant subjectively lied about his reason for firing the plaintiff because he knew his real reason was illegal. Instead, the law literally requires the Court to look the other way: to scrutinize the details of the *plaintiff's* job responsibilities in comparison to those of other plaintiffs, paying no attention to the credibility of a defendant whom it knows for certain—because a jury said so—violated the law.

The deep irony of the instant case is that qualified immunity will deprive an innocent officer of justice, by shielding another who broke the law.

In granting the defendant's motion, the Court has done its duty. But it is not happy about it. And this Court joins the chorus of other judges and legal scholars who call for an end to qualified immunity.

for the defendant on Counts Two and Four. ECF No. 140. The plaintiff contends that he is entitled to judgment as a matter of law as to the existence of protected speech[10] and urges the Court to either grant judgment on causation as well and order a new trial on damages only, or order a new trial as to both causation and damages on the speech claims. ECF No. 155 at 3.[11]

### i.   *Protected Speech*

The motion identifies "five categories of speech" it contends are protected under the First Amendment:

> (1)   direct support of Del. [Convirs-Fowler's] campaign, including speaking while volunteering at the polls and appearing in her advertisements out of uniform;
>
> (2)   speech to command staff about Del. [Convirs-Fowler's] qualifications for office and her policy positions;
>
> (3)   speech directly to the [defendant] about (a) Del. [Convirs-Fowler's] qualifications for office and her policy positions and (b) about [the] [p]laintiff's own run for political office;

---

[10] At points the plaintiff appears to misunderstand the issue here. The motion asserts there is no legal basis for the jury's finding because it was undisputed at trial that "speech was exchanged between" the parties. ECF No. 155 at 2–3. And the motion requests judgment as to the first element of Counts Two and Four "if the Court finds as a matter of law that speech did occur." *Id.* at 3. But in the remainder of the brief, the plaintiff engages with the standard for protected speech. Thus, the Court understands his argument to be that no reasonable jury could have concluded the plaintiff's speech *was not protected*.

[11] Plaintiff's counsel moved for judgment as a matter of law as to liability on the speech claims before the case was submitted to the jury. ECF No. 143 at 236:8–237:2. The Court reserved judgment, *id.* at 237:3–11, and the plaintiff properly renewed the motion within 28 days after the Court entered judgment. ECF No. 154; *see* ECF No. 140; Fed. R. Civ. P. 50(b). Therefore, the issue is properly before the Court.

     (4)    speech with colleagues on his shift regarding his political opinion on Del. [Convirs-Fowler's] candidacy and other matters of public concern; and

     (5)    speech online concerning Del. [Convirs-Fowler's] qualifications, her political activities, and in support of [the plaintiff's] and Del. [Convirs-Fowler's] political positions.

ECF No. 155 at 4–5. A reasonable jury could conclude that most of the plaintiff's speech was unprotected, but one type—canvassing for a political candidate—is protected as a matter of law.

### a.   *Speech at Work, Online, and in Campaign Ads*

The Court assumes without deciding that in all instances the motion identifies, the plaintiff was speaking as a private citizen on a matter of public concern.[12] *See Bland*, 730 F.3d at 387 ("[T]he public's interest in [the plaintiff's] opinions regarding the election may have had particular value to the public in light of his status as a Sheriff's Office employee."); *Waters v. Churchill*, 511 U.S. 661, 674 (1994) (plurality opinion) ("Government employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions."); *see also Bland*, 730 F.3d at 387 ("[I]t is well established that an employee can speak as a private citizen in his workplace, even if the content of the speech is related to the speaker's job.") (citing *Pickering*, 391 U.S. at 564–65) (quotation marks omitted)); *cf. Pickering*, 391 U.S. at 564–65 (teacher's letter about school board's policies addressed matter of public concern); *but cf. Borough of Duryea, Pa. v.*

---

[12] This is a question of law for the Court. *Connick*, 461 U.S. at 148 n.7.

*Guarnieri*, 564 U.S. 379, 399 (2011) (internal complaints at work are not matters of public concern). Still, a reasonable jury could conclude that when the plaintiff spoke at work or to his coworkers, the balance of the interests favored the defendant.

Most of the political speech at issue was directed at the plaintiff's coworkers. Specifically, there was evidence that the plaintiff:

- asked and was denied permission to distribute at work a "ballot signature form" related to Del. Convirs-Fowler's campaign, ECF No. 141 at 185:7–15;

- asked the defendant "if he had heard" about Del. Convirs-Fowler's candidacy, *id.* at 183:1–9;

- discussed Del. Convirs-Fowler's "position" on a qualified immunity bill,[13] *id.* at 192:8–17;

- spoke to the defendant about whether the plaintiff himself should run for City Council, *id.* at 189:20–190:19;

- told the defendant he "thought it was a good idea" to have a Democrat in the state legislature "who [] would have the best interest of the Sheriff's Office in mind," *id.* at 193:8–14; and

- answered his coworkers' questions "about [Del. Convirs-Fowler's] positions on . . . law enforcement" issues, *id.* at 186:3–15.[14]

---

[13] In his motion the plaintiff frames this as speech about "his wife's . . . political views" and "candidacy" generally, ECF No. 155 at 7, but the only evidence at trial about any specific discussion related to a qualified immunity bill. ECF No. 141 at 192:8–17.

[14] The plaintiff also identifies internal thoughts and feelings. *E.g.* ECF No. 155 at 7 ("Plaintiff indicated he did not think that as a Republican, [the defendant] would be able to endorse his wife, but he did hope he would not endorse her opponents or work against her.") (citations omitted). These are not cognizable as speech.

A reasonable jury could certainly conclude such speech "would disrupt the office, undermine [the defendant's] authority, or destroy close working relationships." *Connick*, 461 U.S. at 154. In fact, it was the *plaintiff's* theory that the defendant fired him in part because the defendant believed "diversity of politics within the Sheriff's Department is not good." ECF No. 142 at 175:5–7.

The jury also heard that the plaintiff would comment online "about [] whatever public policy [or] public opinion thing was going on, and if [Del. Convirs-Fowler] would make a comment about something she was doing, [the plaintiff] would . . . repost it and make a comment about how [he] agreed with it and what a great job she was doing." ECF No. 141 at 164:5–9. The only "public policy . . . thing" the jury heard about specifically was a bill related to qualified immunity, which Del. Convirs-Fowler initially voted for. *See* ECF No. 142 at 225:18–227:5. Therefore, the Court can infer that the plaintiff commented online about the qualified immunity bill. It can also infer that the bill had the potential to affect morale, if not policy, at Sheriff's Office. *See id.* ("the law enforcement community was adamantly opposed" to the bill). And even though the plaintiff's online speech did not occur in his physical workplace, there was evidence that it reached his "command staff." ECF No. 141 at 164:24–165:10 (command staff would "comment on [the plaintiff's] comments or would mention that they had seen" his posts); *see also id.* at 164:13–15 (the plaintiff "was friends" with his

---

The motion also points to evidence that the plaintiff generally "expressed a democratic political opinion." ECF No. 142 at 178:19–22. Without any detail as to the content of this expression, a reasonable jury could conclude that the plaintiff did not prove it was protected.

coworkers). Taking these facts together, a reasonable jury could conclude that the plaintiff's online comments—praising Del. Convirs-Fowler's support for a bill that was deeply unpopular among his coworkers—were disruptive in the Sheriff's Office. *See Connick*, 461 U.S. at 154.

Finally, the plaintiff testified that he "would show up as an actor in [Del. Convirs-Fowler's] commercials along with [their] kids." ECF No. 141 at 164:1–2. Though the plaintiff did not appear live in the ads in his Sheriff's uniform, he did wear an outfit that a reasonable jury could conclude looked like a law enforcement uniform, and the ad specifically mentioned that the plaintiff worked in law enforcement. Given the political nature of the defendant's position, a reasonable jury could decide that he had a strong interest in avoiding the appearance that one of his deputies endorsed a candidate from an opposing political party—and that that interest outweighed the plaintiff's interest in expressing his support for Del Convirs-Fowler's campaign.

At this juncture the Court must infer, in the defendant's favor, that the plaintiff's speech directly to his coworkers, as well as his online speech that reached them, had the potential to disrupt the working environment inside the Sheriff's Office. It must also infer that the plaintiff's expressive conduct in Del. Convirs-Fowler's campaign ads could undercut "the efficiency of the public services" the defendant was elected to perform. *Connick*, 461 U.S. at 140. Therefore, a reasonable jury weighing the plaintiff's interest in speaking on matters of public concern against the defendant's interest in effectively administering the Sheriff's Office could strike

the balance in the defendant's favor and find that none of the speech discussed so far was entitled to First Amendment protection. *See id.*

  b. *Canvassing*

  However, there was evidence about one type of speech that no reasonable jury could conclude was unprotected. The plaintiff testified that he "would help with the polls and passing out . . . literature," with "getting [Del. Convirs-Fowler] the signatures that she was required to get to get on the ballot," and with "knocking door to door." ECF No. 141 at 163:24–164:1; ECF No. 143 at 84:8–9. Such speech about an election is quintessentially on a matter of public concern. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 347 (1995) ("[H]anding out leaflets in the advocacy of a politically controversial viewpoint [] is the essence of First Amendment expression."); *Meyer v. Grant*, 486 U.S. 414, 421–22 (1988) (circulating an initiative petition is "core political speech"). There was no evidence at trial that the plaintiff was acting in his capacity as a public employee when he canvassed for his wife's campaign. Nor was there evidence that the plaintiff's private campaign activity— related to an elected office the defendant was not seeking—had any "effect . . . on the efficiency, discipline and proper administration of the workplace," such that the interest-balancing might favor the defendant. *Holland v. Rimmer*, 25 F.3d 1251, 1254–55 (4th Cir. 1994); *Dwyer v. Smith*, 867 F.2d 184, 193 (1989). In fact, there was no evidence that anyone the defendant worked with even knew that he was engaged in this type of speech. Therefore, no reasonable jury could conclude the plaintiff's

canvassing was unprotected.[15] As a result, the plaintiff is entitled to judgment as a matter of law on the question of whether he engaged in speech protected by the First Amendment.

### ii.   *Causation*

However, judgment for the plaintiff as to causation is not appropriate. While the jury heard repeatedly that the defendant was aware of the plaintiff's political beliefs generally and his association with the Democratic Party, there was no evidence that the defendant ever learned of the plaintiff's work at the polls, passing out literature, collecting signatures, or knocking on doors for Del. Convirs-Fowler's campaign. *Cf.* ECF No. 141 at 185:7–15 (plaintiff testifying that he asked for permission to distribute a "ballot signature form" at work but that his request was denied); ECF No. 143 at 84:8–9 (plaintiff testifying that he went "knocking door to door"). Thus, no reasonable jury could conclude that this category of speech was a factor in the defendant's termination decision at all, much less a "substantial or motivating factor." *Bland*, 730 F.3d at 375.

Therefore, even though the jury was unreasonable in finding that the plaintiff's campaign speech was not protected, there is a "legally sufficient evidentiary basis for a reasonable jury to find for [the defendant]" as to liability on the speech claims.

---

[15] It appears to the Court that the jury simply missed the canvassing when it considered whether the plaintiff proved he engaged in protected speech. There was no testimony on the matter besides what the Court quotes here, and the plaintiff's attorneys never once mentioned canvassing in their argument. Though the plaintiff's failure to emphasize this form of speech does not defeat judgment as a matter of law on the first element of Counts Two and Four, it does factor into the Court's analysis on the motion for a new trial. *See infra*, Part III.C.

*Reeves*, 530 U.S. at 149. Accordingly, the plaintiff's motion for judgment as a matter of law on causation will be denied.

### C.   The Plaintiff's Motion for a New Trial

Although the plaintiff proved that he engaged in one type of speech that is protected as a matter of law, he failed to put on any evidence that such speech was a substantial or motivating factor in the defendant's decision to terminate his employment. *See supra*, Part III.B.ii. To give the plaintiff another bite at the apple would be unjust. *See Ramaco Res.*, 74 F.4th at 266.

Moreover, a verdict for the plaintiff on the speech claims would inevitably give way to judgment for the defendant on the basis of qualified immunity. The defendant never explicitly argued he is entitled to qualified immunity on Counts Two and Four, choosing instead to focus on the causation elements of the speech claims. *See generally* ECF Nos. 38, 49 (defendant's briefing on the motion for summary judgment). But if the Court were to grant a new trial after deciding the immunity question in the defendant's favor on Counts One and Three, the defendant would almost certainly seek to raise the defense then, and with good reason.

The balancing test that forms the second step of the *Pickering* analysis is so fact-specific that it is almost impossible for a reasonable officer to know, *ex ante*, whether a court will agree that it struck the balance the correct way. *Crouse v. Town of Moncks Corner*, 848 F.3d 576, 587 (4th Cir. 2017) (granting qualified immunity and observing that "[t]here is no way to balance the competing *Pickering* interests without looking at the facts of a particular case, and no court has managed to sketch out

completely clear criteria governing claims of retaliation against employees for the exercise of First Amendment rights"). Thus, the Court cannot say that "every reasonable official would have understood" that any of the plaintiff's speech at work, online, or in campaign ads was protected by the First Amendment. *Rivas-Villegas*, 595 U.S. at 5.

Even the plaintiff's canvassing activity, which falls closest to the core of protected speech, is not outside the reach of qualified immunity. In *Bland*, the Fourth Circuit concluded a sheriff was entitled to immunity for firing deputies based on their political speech because, at the time the defendant made the decision, "a reasonable sheriff could have believed he had the right to choose not to reappoint his sworn deputies for political reasons, *including speech indicating the deputies' support for the Sheriff's political opponent*." *Bland*, 730 F.3d at 391 (emphasis added). When Defendant Stolle terminated Plaintiff Fowler's employment, no authority on this principle established a boundary between direct political opponents—that is, people running for the office of Sheriff—and political opponents in the general sense—that is, political candidates from an opposing political party or who espouse positions that run counter to the Sheriff's goals. In other words, if Del. Convirs-Fowler had run against the defendant for Sheriff of Virginia Beach and the plaintiff had canvassed for her in that election, it would have been clearer that the defendant could not fire the plaintiff based on that speech. But it is not clearly established whether the same rule applies here. Therefore, even though the plaintiff had a constitutional right to canvass in support of Del. Convirs-Fowler, it was not clearly established that the

defendant could not fire him for exercising that right. Accordingly, even if the plaintiff were to prevail on the speech claims in a second trial, he could not recover.

### D.    The Plaintiff's Motion for a Permanent Injunction

In his Motion for a Permanent Injunction, the plaintiff asks the Court to order he be reinstated as a sheriff's deputy at the same rank and in the same position he held before he was fired. ECF No. 158 at 1. The plaintiff succeeded on the merits of his association claims, *Mayor of Baltimore*, 973 F.3d at 274, and the Court's decision on qualified immunity does not bar the plaintiff's claim for injunctive relief, *Wall v. Wade*, 741 F.3d 492, 498 n.9 (4th Cir. 2014). Nonetheless, the Court in its discretion determines that an injunction is not appropriate because the relief the plaintiff requests would greatly disserve the public interest. *See eBay*, 547 U.S. at 391; *Mayor of Baltimore*, 973 F.3d at 274.

The plaintiff has undoubtedly "suffered an irreparable injury" in the loss of his career with the Virginia Beach Sheriff's Office. *eBay*, 547 U.S. at 391. The fact that a grant of qualified immunity will strip him of any recovery would seem to definitionally make "remedies available at law"—*i.e.*, damages—"inadequate to compensate for that injury." *Id.* And the "balance of hardships" surely favors the plaintiff (who lost his livelihood in the crossfire of a political skirmish between his wife and his boss) over the defendant (who, despite violating an innocent employee's constitutional rights, is walking away scot-free). *Id.*; *see also supra* n.6. However, the public-interest factor is so strong in this case that it tips the balance against issuing an injunction.

On one hand, the jury concluded that Mr. Fowler is not the type of employee who can be fired to give effect to their employer's political goals, so the public interest in protecting the First Amendment association right would seem to favor providing the plaintiff some remedy. But the Virginia General Assembly has dictated that a sheriff's deputy discharges the principal's duties, and a sheriff can remove deputies from office. Va. Code §§ 15.2-1600, 1603; *see also McCaffrey*, 921 F.3d at 168 (discussing statutory scheme). So the political will of the people, as expressed through the legislature, generally cautions against overturning a sheriff's decision to dismiss a deputy.

Moreover, the specific and somewhat unusual facts of the instant case make it clear that the injunction the plaintiff seeks would be contrary to the public interest. The defendant is now retired. ECF No. 142 at 208:20. So reinstating the plaintiff in his former role would require a new sheriff—the defendant's elected successor—to accept a deputy he never chose. That outcome is contrary to the spirit of the statute, passed by an elected body, that establishes the office of the Sheriff.[16]

---

[16] Additionally, as the trial testimony showed, the politics surrounding employment in the Virginia Beach Sheriff's Office intersect with Virginia Beach city politics more broadly, *see* ECF No. 141 at 189:20–192:7 (discussing how the defendant discouraged the plaintiff from running for Virginia Beach City Council but then supported then-Chief Deputy Rocky Holcomb when he was appointed to the same body, before Holcomb became the elected Sheriff upon the defendant's retirement), elections for the state legislature, and even with the way one legislator casts her votes on the floor of the House of Delegates, *see* ECF No. 142 at 225:15–226:22 (recounting defendant's exchange with Del. Convirs-Fowler about how she could "get out of her vote" in favor of a bill "the law enforcement community was adamantly opposed to"). Especially in circumstances this messy, it is prudent for the Court to avoid ordering an action with consequences that inherently reach into the political sphere.

Having weighed the factors for and against granting equitable relief, the Court, in its discretion, concludes that the public interest in effectuating the political will of Virginia Beach voters is paramount. Even though there are good reasons to reinstate the plaintiff in his former role, the balance of the factors favors allowing the new elected Sheriff to choose his own deputies as he sees fit. Accordingly, the plaintiff's Motion for a Permanent Injunction will be **DENIED.**

## IV.   CONCLUSION

The defendant's Motion for Judgment as a Matter of Law and Finding of Qualified Immunity (ECF No. 151) is **GRANTED.**

The Clerk is **DIRECTED** to enter judgment for Defendant Kenneth W. Stolle on Counts One and Three.

The plaintiff's Motion for Judgment as a Matter of Law and a New Trial on the Speech Claims (ECF No. 154) is **GRANTED IN PART** and **DENIED IN PART** as described herein.

The plaintiff's Motion for Permanent Injunction (ECF No. 157) is **DENIED.**

The Clerk is **DIRECTED** to send a copy of this Memorandum Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

_____  /s/  _____

Jamar K. Walker
United States District Judge

Norfolk, Virginia
December 18, 2024

32